**Lisa A. ROBINSON, Respondent,**

v.

**Shannon D. ROBINSON, Appellant.**

**No. WD 60923.**

Missouri Court of Appeals,
Western District.

Dec. 23, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2004.

Application for Transfer Denied
March 30, 2004.

Robert J. Young, Kansas City, for Appellant.

Ellen M. Ryan, Fairway, KS, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

PER CURIAM.

Shannon D. Robinson ("Robinson") appeals a decree dissolving his marriage to Lisa D. Robinson ("Lisa"). The decree awarded sole legal and physical custody of their only child to Lisa and granted supervised visitation to Robinson. Robinson raises four points on appeal. In his first point, he challenges the custody and visitation determinations as against the weight of the evidence. The court, he contends, improperly based these awards solely on his alleged practice of exhibitionist masturbation. In his second point, Robinson argues that the court erred when it refused to call the Guardian ad Litem to the stand because it was unclear whether the Guardian had performed his duties. In his third point, Robinson contests the denial of his motion for a continuance. In his final point, Robinson argues that the trial court erred in its division of the marital property. We affirm the judgment of the trial court.

## Statement of Facts

Lisa and Shannon Robinson were married in 1998. Their child, whom we will call Sandra (not her actual name) for purposes of this opinion, was born a year later. On that same day, Sandra's twin brother died in the womb. Lisa Robinson filed her petition for dissolution on October 18, 1999.

At trial, Lisa presented the following testimony. Shortly after their wedding, Robinson became verbally abusive. Throughout the marriage, this abuse continued. During Lisa's pregnancy, Robinson called her names and forced her to leave the house. After Sandra's twin died in the womb, Robinson reportedly told Lisa that she had "murdered" the child. Robinson remained bitter, believing that the presence of Lisa's pet cat in the household had been a factor in the child's death through the transmission of a harmful organism.

Lisa testified that on three different occasions, she discovered Robinson standing in a window in the direction of a neighbor's house, exposing his penis, and masturbating. Lisa said that Robinson admitted to her that he had been doing this for two years because of a fantasy.

Amy H. testified that she lived across the street from Lisa and Shannon Robinson. She frequently witnessed Robinson standing "in the front door of his house," exposing his penis, masturbating, and looking directly at her house. Rhonda L. testified that she was Amy's coworker, and that she often drove Amy home after work. After she dropped off Amy, she also frequently witnessed Robinson exposing himself and masturbating in the front of his home.

Shannon Robinson testified. He denied that he engaged in exhibitionist behaviors. He stated that Amy H. would frequently expose herself from the front door and window of her residence.

Lisa requested sole legal and physical custody, and requested that Robinson's visitation be supervised. Robinson requested joint legal and joint physical custody of Sandra.

Maureen Patton, a licensed clinical social worker who counseled Lisa, recommended that Lisa should receive sole legal and physical custody and Robinson's visitation should be supervised. Rosalyn Inniss, M.D., a court-appointed psychiatrist, made the same recommendation. The Guardian ad Litem, Donald Wilkinson, participated by examining and cross-examining witnesses. He neither testified nor offered an oral recommendation to the court. He did, however, offer a proposed parenting plan (that included supervised visitation for Robinson).

The trial court issued detailed findings of fact. The court awarded Lisa sole physical and sole legal custody, and granted Robinson supervised visitation. This appeal follows.

### Custody and Visitation

In his first point on appeal, Robinson contends that the trial court erred in its custody and visitation determination. The award of sole custody to Lisa, he contends, was arbitrary because it was improperly based on Robinson's exhibitionism. As to the grant of supervised visitation, he claims that the record does not establish that his sexual behavior adversely affected the child. He argues that such behavior is "merely a lifestyle choice," and, therefore, the court improperly "imposed its personal morality" on the parties. We disagree with both assertions.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), governs our review of a court-tried dissolution case. *Belcher v. Belcher*, 106 S.W.3d 601, 602 (Mo.App. 2003). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In child custody matters, we afford the trial court even greater deference than we do in other areas. *Horton v. Horton*, 961 S.W.2d 67, 69 (Mo.App.1997). Because the trial court is in a better position to evaluate the credibility of the witnesses, we presume that it reviewed all of the evidence and awarded custody in light of the best interest of the child. *Davidson v. Fisher*, 96 S.W.3d 160, 164–65 (Mo.App. 2003). Any conflicting evidence is resolved in favor of the trial court's ruling. *Couch v. Couch*, 978 S.W.2d 505, 510 (Mo.App. 1998). Therefore, the judgment is to be affirmed under any reasonable theory supported by the evidence. *Miers v. Miers*, 53 S.W.3d 592, 596 (Mo.App.2001).

Pursuant to section 452.375.2,[1] the trial court is to consider all relevant factors in its custody decision. The court was entitled to consider Robinson's exhibitionist masturbation, the evidence as to which the court stated it found credible. Robinson presents no precedent for the notion that his behavior is merely another socially and morally neutral way to conduct one's life. Robinson ignores the obvious fact that in all civilized cultures public masturbation is not tolerated, is subject to legal sanction, and is regarded as suggestive of emotional disturbance. Because such a practice transgresses established cultural and social norms, it is pertinent to the ability to parent a child. Dr. Inniss, the court-appointed psychiatrist, testified that Robinson's exhibitionism illustrates that he has problems with boundaries, and exhibits seriously flawed judgment and self-centeredness. We find no authority for the

---

**1.** Unless otherwise noted, all statutory references are to Revised Statutes of Missouri.

proposition that the exhibitionism was not a relevant consideration.

The court also considered substantial evidence that the parties were incapable of reasonable communication with one another. For all the foregoing reasons, we see no abuse of discretion in the award of sole legal and physical custody to Lisa.

█ Robinson also complains of the restriction on his visitation. Visitation rights in Missouri are governed by section 452.400. Where a parent is denied custody, restricted visitation is inappropriate absent a court finding that "visitation would endanger the child's physical health or impair his emotional development." § 452.400.1; *see also J.L.S. v. D.K.S.*, 943 S.W.2d 766, 772 (Mo.App.1997). In this case, the court made such a finding. Robinson acknowledges the finding; however, he claims that this finding is against the weight of the evidence. Again, Robinson argues that the court relied too heavily on allegations that he was an exhibitionist. Citing several cases, including *Buschardt v. Jones*, 998 S.W.2d 791 (Mo.App.1999) (a case involving one parent's unmarried cohabitation), Robinson contends that sexual misconduct alone does not warrant a restriction upon visitation rights. Instead, he says, the behavior must directly affect the mental, physical, economic, or social well-being of the child. The evidence involved here, he claims, does not establish that his exhibitionism would affect Sandra. We disagree.

A continuing practice of public masturbation by a parent is likely to have profound unhealthy effects on a child, particularly when that parent, rather than acknowledging the practice as evidence of emotional disturbance, sees it as a "lifestyle choice." This conclusion, although a matter of common sense, was supported by the testimony of Dr. Inniss and Ms. Patton, who testified that Robinson's aberrant sexual behaviors would impair Sandra's emotional development. Also, there was evidence that Robinson was not always careful about the risk of being seen by family while engaged in this activity. On one occasion while quietly rocking Sandra to sleep, Lisa said she discovered Robinson masturbating not far away as he looked out the window towards Amy H.'s home. Amy H. also testified that one time she witnessed Robinson masturbating in the window as Robinson's own adolescent daughter (from a prior marriage) approached his home.

The trial court's restriction on visitation again was not based solely on Robinson's exhibitionism. The court also cited Robinson's hostility and "continual display of anger towards his wife" in the presence of Sandra and his treatment of Sandra during visitation. There was substantial evidence that Robinson berated and verbally abused Lisa with very foul, disrespectful language in the child's presence.

The court's conclusion that "unsupervised visitation between [Sandra] and her Father would impair the child's emotional development" was supported in the record. The trial court also, it should be noted, showed that it was mindful of the great importance of regular, unsupervised visitation. The trial court remains prepared to allow regular visitation if Robinson will address the pertinent problems. The court specifically provided that Robinson can regain unsupervised visitation if he successfully completes treatment for his behavioral problems. Robinson thus far has apparently made no effort to avail himself of such treatment. However, the court recognized that Robinson, who is an otherwise responsible individual, would be capable of effective parenting if he would address the root causes of the exhibitionism and the hostility. Point denied.

### Guardian ad Litem

■ In his second point on appeal, Robinson argues that the trial court erred when it denied his request to call Donald Wilkinson, the Guardian ad Litem, as a witness. At trial, Robinson's attorney described the purpose of eliciting this testimony:

to provide information to the Court as to the duties of the guardian ad litem, whether home studies were done or not done, the contact of the parties, the contact of the child, what the guardian ad litem did in his role as guardian ad litem to help the Court come to some recommendation and how he came to the final decision of the parenting plan that he did choose.

Where the court finds it is in the child's best interest, the court may appoint a guardian ad litem. § 452.490.4. In child custody cases, the appointed guardian may subpoena witnesses, offer testimony, and examine witnesses. § 452.423.2(1). In addition, the guardian must conduct all necessary interviews with anyone who has knowledge or contact with the child and may interview the child if necessary. § 452.423.2(2). The guardian ad litem may be called to take the stand and testify. *Sanfilippo v. Sanfilippo,* 637 S.W.2d 77, 79 (Mo.App.1982).

The guardian ad litem's bill, which was admitted without objection, described his services, including, *inter alia,* interviewing both parents, attending depositions and pretrial conferences, and cross-examining witnesses at trial. The guardian ad litem had requested the court appoint an independent psychiatrist, which the court had done. The guardian made no recommendation separate from the proposed parenting plan, which recommended sole custody to Lisa and supervised visitation for Robinson. The guardian ad litem presented no testimony as a witness. Here, the court did not request testimony from the guardian ad litem. The statute indicates that it is within the court's discretion as to whether to receive testimony from the guardian ad litem. If the guardian ad litem possesses pertinent factual testimony, and one of the parties shows a need to present such pertinent testimony, it could be an abuse of discretion to refuse to allow the testimony. This, however, is not such a case.

Robinson, in seeking to call the guardian ad litem, failed to demonstrate that there was anything in particular he needed to show. Robinson has no authority for the proposition that he has an *absolute* right to call the guardian to the stand. Robinson merely wanted in this case to question the guardian about his duties and the basis of his recommendation, he said. He presented nothing more specific than that. The trial court, after having endured several days of a highly contested proceeding, could reasonably have regarded such a "fishing expedition" as a waste of time. Robinson cites no authority to support his contention that it is an abuse of discretion to deny permission to call the guardian to the stand for the mere purpose of general questioning about his duties and his recommendation.

Because the guardian's recommendations as to custody and visitation were well supported by the evidence, and because the guardian did not testify, and because Robinson failed to demonstrate any need for a general fishing expedition with regard to cross-examining the guardian ad litem, we discern no abuse of discretion in denying permission to do so.

### Continuance

■ In his third point, Robinson contests the denial of his motion for a continuance.

The grant or denial of a continuance is largely within the discretion of the trial court. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo. banc 1991). Accordingly, we will disturb those rulings only upon a showing of abuse of discretion. *Mills v. Mills,* 939 S.W.2d 72, 74 (Mo.App. 1997).

In this case, Robinson was at first represented by Michael McIntosh and Robert Paden. Each was granted leave to withdraw. Robinson retained another attorney. Shortly after the beginning of trial, that attorney filed a motion to withdraw because of a medical impairment. The court granted the motion to withdraw and declared a mistrial. At the beginning of the second trial, Robinson's new attorney, Christie Sherman, orally requested a continuance for additional discovery time. The court denied the request.

Pursuant to Rule 65.03, a continuance must be presented in timely fashion and must be in the form of a "written motion accompanied by an affidavit." Sherman failed to follow the proper procedure, and failed to demonstrate why justice demanded that Robinson be exempt from such procedural requirements. In any event, Robinson fails to demonstrate that the denial of the continuance was an abuse of discretion. *See Bydalek v. Brines,* 29 S.W.3d 848, 856 (Mo.App.2000).

#### Division of Property

■ In his final point on appeal, Robinson argues that the trial court erred in dividing the marital property. The trial court stated that it was awarding Lisa a 60% share of the marital assets. Robinson contends that the marital assets totaled only $23,171.00, and, therefore, Lisa should have been awarded $13,902.60 rather than $22,343.00.

Rule 84.04(c) requires a "fair and concise statement of the facts relevant to the questions presented for determination without argument." *Id.* Neither the Statement of Facts nor the Point Relied On here presented any facts, much less "a fair and concise statement of the facts relevant" to the division of marital property.

The Point Relied On stated merely:

IV. THE TRIAL COURT ERRED IN DIVIDING THE MARITAL PROPERTY BECAUSE THE LAW IS THAT THE COURT SHALL DIVIDE THE PROPERTY PURSUANT TO ITS FINDINGS AND THE LAW WAS NOT FOLLOWED IN THAT TWENTY TWO THOUSAND THREE HUNDRED AND FORTY–THREE DOLLARS IS NOT SIXTY PERCENT OF THE MARITAL PROPERTY.

■ The point relied on does not comply with Rule 84.04 and, therefore, does not preserve the issue for appeal. In any event, as Lisa points out, any mathematical error in the division of property was actually in Robinson's favor. The court stated that it intended to allow Lisa sixty percent of the marital property. Respondent's brief shows that each party received approximately fifty percent of the marital property. Robinson cannot complain about that. Point is denied.

#### Conclusion

For the foregoing reasons, the judgment is affirmed.