In re the MARRIAGE OF Kenneth
P. WEST, Appellant,

and

Karianne West, Appellee.

No. 03CA0749.

Colorado Court of Appeals,
Div. V.

June 17, 2004.

Karen S. Renne, Broomfield, Colorado, for Appellant.

Kevin W. Major, Colorado Springs, Colorado, for Appellee.

Opinion by Judge WEBB.

Kenneth P. West (father) appeals from a post-dissolution order modifying parenting time and increasing child support payable to Karianne West (mother). We vacate the order and remand for reconsideration.

In the 1992 permanent orders, the parties were granted joint legal custody of their two minor children. Mother had primary residential custody, and father was granted parenting time. Thereafter, both child support and parenting time were modified in response to changed circumstances.

In a 1998 order, the court adopted the parties' stipulation as to parenting time and child support. Under this order, father was granted parenting time of one weekend per month, parts of several vacation periods, and eight consecutive weeks during the summer, which totaled ninety-three overnights. Father was ordered to pay child support of $350 per month, which included parochial school tuition; certain arrearages; and his proportionate share of the children's uncovered medical and dental expenses.

In June 2002, mother filed a motion (later amended) to modify parenting time and increase child support. At a hearing in January 2003, the trial court made certain oral findings, indicated that mother's motion would be denied, and directed that child support be recalculated to reflect changes in the parties' financial circumstances.

Mother moved for reconsideration of the court's oral rulings. She argued that the court wrongly used the endangerment standard in determining that father's parenting time should not be reduced; that child support should be based on the actual number of nights that the children spent in father's care, and thus should be calculated using Worksheet A rather than Worksheet B; and that the children's private school tuition and athletic fees and expenses should have been included in the child support calculation. The trial court granted mother's motion and, in March 2003, entered an order prepared by mother's attorney.

## I.

■ Father first contends the trial court abused its discretion in issuing a written order that reversed the oral rulings entered at the conclusion of the evidentiary hearing. Father argues that the trial court's initial oral ruling was correct, and the court had no basis to grant mother's motion for reconsideration. We disagree.

■ An order is not final until it has been reduced to writing, dated, and signed. C.R.C.P. 58; *In re Marriage of Hoffner,* 778 P.2d 702 (Colo.App.1989). Thus, "[d]espite a court's characterizations of its oral remarks as 'findings and conclusions,' the court has the authority to supplement and modify the opinions it expressed in its oral remarks until the date judgment formally enters." *People in Interest of O.J.S.,* 844 P.2d 1230, 1233 (Colo.App.1992), *aff'd sub nom. D.A.S. v. People,* 863 P.2d 291 (Colo.1993).

The trial court's remarks at the conclusion of the hearing were not reduced to writing, dated, and signed by the court, and thus did not constitute a final order. The court had the authority to modify its earlier findings and orders at any time before issuing a final order. When it did so, the written 2003 order became the court's final order. Only this order may serve as the basis for an appeal. *See People in Interest of O.J.S., supra.*

Because father's allegations of substantive error are directed toward the written order, we will treat them as an appeal of that order.

## II.

■ Father next contends the trial court abused its discretion in reducing his parenting time based on the best interests of the children. We agree that the amount of parenting time authorized for father must be reconsidered.

Modification of parenting time is governed by § 14–10–129, C.R.S.2003. "[T]he court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child." Section 14–10–129(1)(a)(I), C.R.S.2003. However, "[t]he court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development." Section 14–10–129(1)(b)(I), C.R.S.2003. The statute neither defines "restrict" nor offers a test to distinguish an order that restricts parenting time from an order that merely modifies a prior order granting parenting time.

■ Because the question whether the "best interests" standard or the "endangerment" standard should apply in this case arose below and will arise again on remand, we address it here.

Pursuant to the 1998 stipulated order, father had been entitled to shared parenting time totaling ninety-three overnights per year, although for reasons that are in dispute he has not used all the time allotted to him. The 2003 order reduced father's summer parenting time by approximately fourteen overnights.

In cases decided under an earlier statutory scheme, divisions of this court applied the endangerment standard where a proposed modification of visitation would have reduced the amount of a father's parenting time. *See Manson v. Manson,* 35 Colo.App. 144, 529 P.2d 1345 (1974)(trial court's finding that visitation rights previously granted would not impair children's health or significantly impair their emotional development was sufficient to warrant denial of motion for reduction in father's visitation rights); *see also In re Marriage of Velasquez,* 773 P.2d 635 (Colo.App.1989).

However, the statute under which these cases were decided entitled the noncustodial parent to "reasonable visitation" unless the court found that visitation "would endanger the child's physical health or significantly impair his emotional development." Colo. Sess. Laws, 1971, ch. 130, § 46–1–29(1) at 531 (later codified as § 14–10–129(1)). Since 1987 the statutes concerning child custody and visitation have been extensively revised. Although the use of the best interests and endangerment standards in modifying custody was addressed in *In re Marriage of McNamara,* 962 P.2d 330 (Colo.App.1998), no appellate opinion decided under the current statute has resolved the tension between the best interests standard and the endangerment standard when a trial court modifies a

prior order to reduce or impose restrictions on parenting time.

In the absence of Colorado authority on this question, we are guided by decisions from other states that have enacted the Uniform Dissolution of Marriage Act (UDMA). *See* § 14–10–104(1), C.R.S.2003 ("This article shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact it.").

Most of the cases that address "restrictions" in visitation involve outright denial of visitation or require supervised visitation. *See, e.g., Turley v. Turley,* 5 S.W.3d 162 (Mo.1999)(denial of all overnight visitation); *Robinson v. Robinson,* 128 S.W.3d 543 (Mo.Ct.App.2003)(supervised visitation). Neither circumstance obtains here.

Minnesota's statute governing the modification of parenting time is similar to § 14–10–129. *See* Minn.Stat. § 518.175(5) (2002)(providing in relevant part that the court may modify an order granting or denying parenting time if modification would serve the best interests of the child, but the court may not restrict parenting time unless it finds that parenting time would endanger the child).

Minnesota courts have held that only a substantial alteration of visitation rights constitutes a restriction requiring the use of the endangerment standard. *See, e.g., Anderson v. Archer,* 510 N.W.2d 1 (Minn.Ct.App. 1993)(out-of-state father had been awarded every weekend and every Tuesday and Thursday "when in Minnesota," as well as the full term of summer vacation; reduction of his visitation time to alternating weekends, two evenings a week, six weeks during the summer, and alternating holidays upon his resumption of residence in Minnesota was not a restriction of visitation); *cf. Clark v. Clark,* 346 N.W.2d 383 (Minn.Ct.App.1984)(gradual reduction in father's visitation from fourteen weeks to five and one-half weeks per year during the four-year period following his child's removal from Minnesota constituted a restriction of visitation rights). To determine whether a reduction in visitation constitutes a restriction of visitation, Minnesota courts are instructed to consider both the reason for the change and the amount of the reduction. *Anderson v. Archer, supra.*

Missouri has also adopted the UDMA. Its courts, too, have concluded that a modest reduction in parenting time is not a restriction requiring the use of the endangerment standard. *See Searcy v. Searcy,* 85 S.W.3d 95 (Mo.Ct.App.2002)(a modest reduction in father's visitation to accommodate the children's best interests in performing well in school was not a restriction).

■ We find these cases well reasoned, and conclude that determining whether to apply the best interests standard or the endangerment standard may involve inquiry into both the quantitative and the qualitative aspects of the proposed change to parenting time, as well as the reason or reasons advanced for the change. And we note that, while endangerment will necessarily encompass best interests, few best interests arguments will show endangerment. However, because this record presents neither a qualitative change in the nature of father's parenting time, such as a requirement that visitation be supervised, nor a reason for the change that implicates the children's safety, we need decide only which standard applies to a purely quantitative change, and one of relatively limited magnitude.

Here, the reduction of father's summer parenting time from eight weeks to six weeks, as suggested by mother, does not constitute a restriction for the purposes of applying the endangerment test under § 14–10–129(1)(b)(I). Hence, the court correctly applied the best interests standard in concluding that the children should have "a parenting time schedule which conforms to the reality of the parenting time [father] has historically exercised."

However, the parties disagree as to the reasons for father's failure to exercise all the parenting time available to him under the parties' 1998 stipulation. Mother contends that father chose not to exercise all his parenting time, while father maintains his failure to use all his parenting time was the result of mother's interference with his attempts to arrange time with the children. In the March 2003 order, the trial court acknowl-

**1252**

edged this disagreement, but did not resolve it.

Mother argued that father's recent assertion of his previously unexercised parenting time was not in the children's best interests because they needed predictability. However, this argument would not be persuasive if, as father contends, mother in effect caused the instability by scheduling the children's activities to frustrate his parenting time. Thus, the reasons for father's historical failure to use all his parenting time should be considered in determining whether it is in the children's best interest to reduce the amount of parenting time allotted to him.

Accordingly, on remand the trial court should make findings on this issue and reconsider whether it is in the children's best interest to reduce the amount of parenting time allotted to father to conform to the amount of parenting time historically exercised by him.

### III.

■ Father next contends that the trial court abused its discretion in ordering that parochial school tuition and athletic fees in private programs should be included as extraordinary expenses in calculating his child support obligations. Father argues that the order was not based on adequate findings as to the reasonableness and necessity of the tuition and fees. We agree.

■ The trial court has discretion to order that the reasonable and necessary costs of a child's attendance at a private school be divided between the parents in proportion to their income. *See* § 14–10–115(13)(a)(I), C.R.S.2003; *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997). Attendance at a private school may be approved where it is necessary to meet the particular educational needs of the child. In determining whether private school meets a child's particular educational needs, the court may consider a number of factors, including the standard of living that the child enjoyed during the marriage and the standard of living that the child would have enjoyed if the parents' marriage had not been dissolved. *See In re Marriage of Payan*, 890 P.2d 264 (Colo.App.1995).

■ A parent may also be required to contribute to the costs associated with a child's athletic activities in some cases. Similarly, the child's particular needs and predissolution standard of living are among the factors to be considered by the court. *See In re Marriage of Laughlin*, 932 P.2d 858 (Colo. App.1997).

Here, in the 2003 order the court found that both parents agreed that the children benefited from their participation in athletics and that the expense of their athletic activities was reasonable; that the decision to educate the children in parochial schools was made jointly during the marriage; and that the tuition expense was reasonable based on the standard of living that the children would have enjoyed if the marriage had not been dissolved. On this basis, the court ordered that the children's tuition expenses and their athletic fees and expenses be included in the child support worksheet as extraordinary expenses.

■ The addition of extraordinary expenses to a parent's basic child support obligation must be supported by the court's findings and evidence in the record. *See In re Marriage of Finer*, 920 P.2d 325 (Colo.App. 1996). If the findings were prepared by the attorney for the successful litigant, the appellate court will "scrutinize them more critically and give them less weight than if they were the work product of the judge himself, or, at least bear evidence that he has given them careful study and revision." *Uptime Corp. v. Colo. Research Corp.*, 161 Colo. 87, 93–94, 420 P.2d 232, 235 (1966).

Here, the 2003 order was prepared by mother's attorney. Several of the findings set forth in support of mother's claim for tuition and athletic expenses lack record support.

For example, the court found both parents agreed that the cost of the athletic activities was reasonable. However, the record does not suggest that father agreed the fees were reasonable. To the contrary, he testified that he had not been consulted about the children's athletic programs and had not agreed to pay the expenses associated with them. He also testified concerning the adequacy of public athletic programs.

The court found the parties agreed during their marriage that the children would be educated in parochial schools. This finding is contradicted by testimony of both parties. Mother testified only that she and father had agreed that the children would be raised in the Catholic faith. Mother never testified that the parties had agreed that the children would be sent to parochial schools when they reached school age; she said that the parties had "always disagreed" about this. Father testified that he had not been consulted before the enrollment of the children in parochial school. Thus, the decision to send the children to parochial school appears to have been made unilaterally by mother, without father's knowledge or agreement.

The court also found the children's tuition expense was reasonable based on the standard of living that the children would have enjoyed had the marriage not been dissolved. The basis for this finding is not stated.

Further, the record provides conflicting and incomplete information on the amount of the children's tuition. Mother testified that the tuition was $1,800 for both children for the most recent school year. Father testified that he was told by school officials that his son's tuition would be $2,800 to $3,200 for the next year and his daughter's tuition would be $5,000. The findings do not indicate which figure (if either) the court accepted as true, nor are they sufficiently explicit to give this court a clear understanding of the basis for the trial court's conclusion that the amount was reasonable based on the standard of living that the children would have enjoyed if the marriage had not been dissolved.

Mother argues that because father failed to object to paying parochial school tuition for several years, he has waived his right to object now. However, in matters governed by the UDMA, the policies to be furthered by the UDMA take precedence over general contract principles and equitable rules. *See In re Marriage of LaFaye*, 89 P.3d 455 (Colo.App.2003)(post-nuptial agreement not enforceable under equitable principles or promissory estoppel; UDMA applied). Thus, in determining whether the children's parochial school tuition should be approved prospectively as a reasonable and necessary expense, the court should consider the parents' income, the standard of living that the children would have enjoyed if the parents' marriage had not been dissolved, and other factors as appropriate. *See In re Marriage of Payan, supra.* The court should not give undue weight to father's failure to object to the payment of parochial school tuition in the past, particularly where, as here, the record includes evidence that such tuition may have increased significantly.

Because we are unable to conclude that the evidence supports the trial court's findings regarding the reasonableness and necessity of the children's tuition and athletic fees, we agree that the court abused its discretion in ordering that they be included in the worksheet as extraordinary expenses. On remand, the trial court is directed to reconsider this issue and make additional findings to support the reasonableness and necessity of any extraordinary expenses that the court approves. *See In re Marriage of Finer, supra.*

The order is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge NIETO and Judge RUSSEL concur.