**Daryl Harry KAROLAT, Respondent,**

v.

**Jean Lynn KAROLAT, Appellant.**

**No. WD 63538.**

Missouri Court of Appeals,
Western District.

Oct. 26, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2004.

James C. Wirken, Kansas City, MO, for appellant.

John W. Dennis, Jr., Independence, MO, for respondent.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

Jean Karolat (Mother) appeals the judgment of the trial court dissolving her marriage to Daryl Karolat (Father) and awarding sole legal and physical custody and primary residential custody[1] of the parties' two minor children to Father. She claims that the trial court erred in striking her pleadings and entering default judgment against her as a sanction for her failure to comply with discovery and awarding sole legal and physical custody of the children to Father. The judgment of the trial court is affirmed.

## Facts

The parties were married on September 19, 1988, and separated in September 2001. Two children were born of the marriage, Shania, born September 19, 1995, and Lysandor, born January 31, 1997. Father filed his petition for dissolution in June 2002 requesting the trial court to dissolve his marriage to Mother, divide the marital assets and debts, award him sole legal and physical custody of the children, and allow the children to relocate to the State of California, where he was then residing. With his petition, Father also filed a motion for temporary custody and a motion to appoint a guardian ad litem alleging that during the parties' separation, Mother had not maintained the health and well-being of the children, the children were being grossly neglected in that they were living in extreme filth and poor living conditions and not attending school regularly, and Mother was perhaps suffering from a serious mental or physical illness. Thereafter, the trial court appointed a guardian ad litem.

Mother filed her answer and counter-petition in August 2002 requesting the trial court to award the parties joint legal and physical custody. In December 2002, Father sent Mother standard dissolution interrogatories, including questions about income and expenses and assets and debt, and a request for production of documents. Also in December 2002, Mother's attorney filed a motion to withdraw as attorney of record alleging that Mother had not provided payment as agreed and had withheld vital information. The trial court granted the motion on January 6, 2003. Mother retained new counsel on January 20, 2003.

On February 10, 2003, Father filed a motion to compel discovery. Mother, however, continued to fail to respond to discovery, so Father filed a motion for sanctions on May 16, 2003. Three days later, Mother's second attorney filed a motion to withdraw for nonpayment of fees. At a hearing on the attorney's motion that same day, Mother told the trial court that she wished to have her attorney withdraw. The trial court, therefore, granted the motion. Also at the hearing, Mother confirmed that she possessed the discovery to be completed. The trial court informed Mother that she had ten days to deliver the completed discovery to Father's attor-

---

1. Mother uses the phrase "primary residential custody" to describe the trial court's award of sole physical custody of the children to Father with specific times of visitation for her. In this sense, the phrase has no legal significance, and this court has suggested that the designation of "primary" in custody cases be abandoned in favor of the joint and sole terminology. *Loumiet v. Loumiet,* 103 S.W.3d 332, 338–39 (Mo.App. W.D.2003). This court will, therefore, review Mother's point as an attack on the trial court's award of sole physical custody to Father.

ney and that if she did not, she could be sanctioned. The court explained to Mother that sanctions could include striking her pleadings and permitting Father to proceed by default. The trial court also told Mother that if she desired to hire another attorney, she needed to take immediate steps because the matter had been delayed long enough and needed to be concluded. Finally, the trial court directed Mother to comply with a request by the guardian ad litem to submit to a mental examination on June 11.

On June 5, 2003, the trial court, by docket entry, struck Mother's answer and counter-petition as sanctions for failing to comply with its order to complete discovery. Another pre-trial conference was held on July 25, 2003. At the hearing, Mother indicated that she had not retained a lawyer and confirmed that she had not completed discovery. Mother also confirmed that she submitted to a mental evaluation on June 11 but directed the doctor to withhold the report. The guardian ad litem informed the trial court that Mother had refused her entry into her home and had refused to permit her to meet the children. Despite this, Father and the guardian ad litem requested that the guardian ad litem be dismissed. The guardian ad litem explained that DFS had twice found a lack of evidence of abuse or neglect of the children although she did have some concerns regarding the living conditions of the children. The trial court dismissed the guardian ad litem and set the case on the August 21, 2003, default docket.

At the August 21, 2003, proceeding, Mother was represented by her third attorney in the case. Mother filed a motion for continuance to comply with Father's discovery requests. The trial court denied the motion. The trial court also denied Mother's request to cross-examine wit-

nesses in the default proceeding. Father proceeded with his case presenting the testimony of several witnesses including himself and introducing several exhibits including photographs of Mother's home and the childrens' school attendance records. Mother was not allowed to cross-examine witnesses in the default proceeding. Following the hearing, the trial court entered its judgment of dissolution of marriage. Among other things, the court awarded sole legal and physical custody of the minor children to Father with specific periods of parenting time to Mother. This appeal by Mother followed.

## Standard of Review

*Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) governs review of a court-tried dissolution case. *Robinson v. Robinson*, 128 S.W.3d 543, 546 (Mo.App. W.D.2003). Thus, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32; *Robinson*, 128 S.W.3d at 546.

In child custody matters, the trial court is afforded even greater deference than in other areas. *Robinson*, 128 S.W.3d at 546. Because the trial court is in a better position to evaluate the credibility of the witnesses, the evidence and reasonable inferences that may be drawn therefrom are viewed in the light most favorable to the judgment, and contrary evidence is disregarded. *Meyer v. Block*, 123 S.W.3d 316, 321 (Mo.App. W.D.2003). The appellate court presumes that the trial court reviewed all of the evidence and awarded custody in light of the best interest of the child. *Robinson*, 128 S.W.3d at 546. An award of child custody will not be disturbed on appeal unless the appellate court is firmly convinced that the child's

welfare requires some other disposition. *Meyer*, 123 S.W.3d at 321 (quoting *Dixon v. Dixon*, 62 S.W.3d 589, 592 (Mo.App. W.D.2001)).

## Sanctions

■ In the first point addressed on Mother's appeal,[2] Mother claims that the trial court erred in striking her pleadings, entering default judgment against her, and preventing her from objecting to or cross-examining Father's evidence as a sanction for her failure to comply with discovery, specifically to answer interrogatories and to produce documents.

■ The imposition of sanctions for a party's failure to participate in discovery, including an order denying the right to cross-examine witnesses and present defenses, is a matter within the discretion of the trial court. *Eidson ex rel. Webster v. Eidson*, 7 S.W.3d 495, 499 (Mo.App. W.D. 1999). Rules 61.01(b) and (d) expressly permit a trial court to strike pleadings and enter judgment by default as permissible sanctions for failure to answer interrogatories or to produce documents. *Id.* Although default is a drastic punishment, it is properly invoked where a party has shown a contumacious and deliberate disregard for the authority of the court. *Giesler v. Giesler*, 731 S.W.2d 33, 34 (Mo. App. E.D.1987). The rendition of judgment following the striking of pleadings for failure to obey a discovery order does not come by default in the ordinary sense but is treated as a judgment upon trial by the court. *Bell v. Bell*, 987 S.W.2d 395, 399–400 (Mo.App. E.D.1999). Thus, when such sanctions are imposed, the principles governing the appeal relate to the discretion of the trial court to impose such sanctions that render the cause uncontested and subject to judgment. *Eidson*, 7 S.W.3d at 499. The exercise of the trial court's discretion will not be disturbed on appeal unless it is exercised unjustly. *Id.; Bell*, 987 S.W.2d at 399. Review is limited to determining whether the trial court could have reasonably concluded as it did, not whether the reviewing court would have imposed the same sanctions under the same circumstances. *Eidson*, 7 S.W.3d at 499.

■ The record reveals that Mother willfully disregarded the authority of the trial court throughout the proceedings. Mother received Father's standard dissolution interrogatories in December 2002. Mother did not respond to discovery so Father filed a motion to compel discovery in February 2003. After Mother's continued failure to respond to discovery, Father filed a motion for sanctions in May 2003. At the hearing on May 19, 2003, Mother confirmed that she possessed the discovery and would complete it in ten days. The trial court encouraged her to comply with discovery and the mental examination. The court clearly outlined the consequences of failure to comply with discovery. It explained to Mother that sanctions could include striking of her pleadings and permitting Father to proceed by default. After Mother again failed to complete discovery, the trial court struck her pleadings in June 2003. Additionally, Mother admitted to the trial court that she directed the doctor who conducted her mental evaluation not to release the report. Similarly, Mother admitted that she refused the guardian ad litem access to her home or children. Mother's conduct hindered and delayed the proceedings for six months before her pleadings were finally struck. An additional three months passed before the trial finally occurred. In the meantime, allegations were made that the children were living in poor living conditions

---

**2.** Mother's points relied on are addressed in a different order than presented.

and not attending school regularly. A trial court has an obligation to see that discovery rules are followed and to expedite litigation. *Bell*, 987 S.W.2d at 401. The trial court's striking of Mother's pleadings and entry of default judgment against her were reasonable under the circumstances. *See Giesler*, 731 S.W.2d at 35 (where husband failed to appear at two hearings and filed incomplete and evasive answers to interrogatories only after threatened with default, trial court's striking of husband's pleadings was reasonable).

▉▉▉ Mother argues that the trial court erred in imposing the sanctions that it did because Father was not prejudiced by Mother's failure to respond to discovery in that the discovery sought was not mandatory for proceeding on the matter and Father already knew the answers sought. Rule 56.01(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action[.]" Before sanctions are imposed for failure to engage in discovery, the trial court must determine that the opposing party is prejudiced by the errant party's non-compliance with discovery. *Eidson*, 7 S.W.3d at 499. The primary issues throughout these proceedings were property distribution and child custody. Evidence in the record indicated that, during the marriage and over the course of the separation, Mother received various large sums of money from Father and the sale of marital property. Mother's failure to complete interrogatories or statements of assets and debts or income and expenses, however, prevented Father from tracing all of Mother's savings and expenditures of funds and property in her possession. Additionally, Mother refused to release the results of her mental examination and refused to allow the guardian ad litem into her home and to meet the children impeding the guardian ad litem's attempt to perform her duty and further hindering Father's ability to obtain information concerning the child custody issue. Father was, therefore, prejudiced by Mother's non-compliance with discovery.

▉▉▉ Next, Mother argues that the trial court prejudiced her by allowing her first two attorneys to withdraw. She contends that the trial court failed to hold her counsel to any obligation of representation and allowed withdrawal of the attorneys without confirming her understanding of the effect of the withdraws, default, or sanctions. The trial court has discretion in deciding whether to allow trial counsel to withdraw. *Nance v. Nance*, 880 S.W.2d 341, 345 (Mo.App. E.D.1994). "Although that discretion is judicial in nature and reviewable on appeal, every intendment is in favor of the trial court's ruling." *Id.*

Mother's first attorney was allowed to withdraw over one year before the matter was tried. That attorney requested to withdraw because Mother had not provided payment as agreed and had withheld vital information. Thereafter, Mother had ample time to hire a second attorney, and she did so. Upon the application of her second attorney to withdraw, also for non-payment of fees, Mother appeared before the trial court and consented to the withdrawal. After dismissing the attorney, the trial court explained to Mother her obligation to complete discovery within ten days and further explained the sanctions that could be imposed if she failed to meet her obligation. Additionally, the trial court told Mother that if she desired to hire another attorney, she needed to take immediate steps to do so because the matter would proceed without further delay. The trial court, therefore, did not abuse is discretion in allowing Mother's first two attorneys to withdraw. *See Id.* (where party consented to withdrawal of attorney

and had been previously ordered to be prepared to proceed whether with counsel or pro se, trial court did not abuse its discretion in permitting attorney to withdraw).

■ Mother next complains that the trial court failed to apply lesser-suggested sanctions set forth in section 452.375.7, RSMo 2000. That statute provides that if a parent refuses to exchange information concerning the health, education, and welfare of the child with the other parent, the trial court shall order the parent to comply immediately and to pay the prevailing party a sum equal to the prevailing party's cost associated with obtaining the requested information. § 452.375.7, RSMo 2000. While section 452.375.7 may be applicable to discovery issues, Mother cites no authority that it is the exclusive remedy for discovery violations in child custody cases. The trial court imposed sanctions for Mother's non-compliance of discovery under Rule 61.01. As discussed above, the trial court's imposition of sanctions under the Rule was reasonable based on Mother's willful disregard of its order to complete discovery.

■ Mother's next argument against the trial court's imposition of sanctions against her is that the trial court failed to follow the local rules of the seventeenth judicial circuit, specifically Rule 68.10 requiring mediation in cases involving child custody, Rule 68.1 requiring attendance by parties at education sessions in cases where custody is to be determined, and Rule 68.9 requiring the use of standard opening interrogatories and request for production of documents. A litigant must object to procedural errors or be deemed to have waived objection. *State v. Williams*, 46 S.W.3d 35, 40 (Mo. App. E.D.2001); *B.C. Nat'l Banks v. Potts*, 30 S.W.3d 220, 223 (Mo.App. W.D.2000). Mother did not raise these alleged errors before the trial court, therefore, they are deemed waived.

■ Finally, Mother contends that the trial court erred in imposing sanctions in that it did so without a motion or notice of hearing for sanctions. Rule 61.01(b) provides, in pertinent part:

If a party fails to answer interrogatories or file objections thereto within the time provided by law ... the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

(1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party.

Rule 61.01(d) provides similar sanctions for failure to produce documents upon "motion and reasonable notice to other parties." Father filed a motion to compel discovery in February 2003. Mother continued to fail to respond to discovery, and Father filed a motion for sanctions on May 16, 2003. At a pre-trial hearing held three days later, Mother confirmed her possession of the discovery, her awareness of her obligation to comply with it, and her promise to complete it within ten days. The court emphasized to Mother that sanctions for non-compliance within ten days could include striking her pleadings and permitting Father to proceed by default. On June 5, 2003, after Mother still had not completed discovery, the trial court granted Father's motion and struck Mother's answer and counter-petition. At another pre-trial hearing held on July 25, 2003, Mother confirmed that she had not complied with discovery, and the trial court reiterated that it had imposed sanctions. The record indicates that the trial court imposed sanctions only after motion by

Father and reasonable notice to Mother as required by Rules 61.01(b) and (d).

The trial court's discretion to impose sanctions in this case was not unjustly exercised. The point is denied.

### Award of Sole Legal and Physical Custody of Children to Father

■■■ In her two remaining points, Mother claims that the trial court erred in awarding Father sole legal and physical custody of the children. Specifically, Mother argues that public policy in this state favors joint legal custody and no evidence was presented that the parties could not function as a unit and that insufficient evidence was presented that an award of sole legal and physical custody to Father was in the best interests of the children given the sanctions imposed by the trial court and the evidence that Father had not been a part of primary care giving for several years and planned to relocate the children to California.

■■■ Joint legal custody is favored in Missouri on public policy grounds. *Meyer v. Block,* 123 S.W.3d 316, 324 (Mo. App. W.D.2003); § 452.375.4, RSMo, 2000. Section 452.375.4, RSMo 2000, declares "that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child ... and that it is in the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of the children[.]" To effectuate this policy, a trial court is directed to consider joint custody prior to making any award of custody. § 452.375.5, RSMo 2000; *Ficker v. Ficker,* 62 S.W.3d 496, 500 (Mo. App. E.D.2001). The preference for joint custody, however, is not absolute. *Meyer,* 123 S.W.3d at 324. It can be overcome where joint legal custody is not in a child's best interests or in circumstances where the parents are consistently unable to agree regarding decisions relating to their child's welfare. § 452.375.4, RSMo 2000; *Meyer,* 123 S.W.3d at 324.

Ultimately, child custody must be determined in accordance with the best interests of the child. § 452.375.2, RSMo 2000. The trial court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

*Id.*

Substantial evidence supports the trial court's award of sole legal and physical custody of the children to Father. Evidence was presented that Mother did not provide a clean and habitable home for the children. Mother has approximately twelve to thirteen dogs and twelve cats that live in the home. The dogs are kept in different parts of the house to keep them from fighting. Some of the cats use the jacuzzi in the master bathroom as a litter box. On one visit to the home, Father found five or six ducks living in the basement. Photographs taken by Father of Mother's home in May 2002 and the night before trial in August 2003 were introduced at trial. The photographs depicted many animals around the house and urine stains and animal feces on the floors in the house and in the basement including in the children's play area. All of the kitchen counters were covered with dirty dishes, kitchenware, food, and trash. The laundry room floor was piled with trash, empty laundry baskets, and broken toys making it difficult to walk into the room. Bedroom floors and closets were covered with dirty clothes and toys. Bathroom counters, sinks, and floors were likewise cluttered with trash and dirty dishes. The floor of the garage was covered with trash including paper, straw, and empty cat food cans, bags of pet food, and kitty litter bags. Father testified that Mother's car was also filthy because she uses it to transport feed and hay to her horses. He explained that during one visit, he cleaned several trash bags of garbage out of Mother's car and even found mice feces and several dead mice in the car.

Additionally, several neighbors and acquaintances of Mother testified that Mother does not properly care for the children. They testified that Mother's home is not a sanitary or healthy environment for the children; Mother does not ensure that the children eat properly; and the children are constantly ill with pink eye, ear infections, and colds.

Evidence was also offered that while in Mother's care, the children have poor school attendance. The children's principal testified that during the 2002–2003 school year, the children were either absent from school or tardy approximately one-third of the time and their sporadic attendance was hurting their academic progress. Additionally, the children's teachers approached the principal regarding the lunches the children brought to school, mostly snack foods. Mother's stated reasons to the principal for the children's absenteeism and tardiness were lack of transportation and the need to take care of her animals. The principal testified that he informed Mother of the available bus service and hot lunch program, but Mother never took advantage of the services.

Conversely, Father testified about his home in California and introduced photographs of it into evidence. He testified that he would provide the children a clean and healthy home. Additionally, Father testified that, in his custody, the children would attend school regularly. Father has visited the school in California that his children would attend and talked to the principal. The school is in a very good school district, and it is one half block from Father's home. The evidence further revealed that the children love Father, are excited to be with him, and Father takes good care of them when they are with him.

The evidence demonstrated that the parties have widely divergent attitudes re-

garding satisfying the needs of their children. Without a commonality of belief concerning the raising of the children, the trial court did not err in failing to award joint legal custody in this case. *See Hankins v. Hankins,* 920 S.W.2d 182, 186 (Mo. App. W.D.1996).

■ Additionally, the evidence supported the trial court's award of sole physical custody of the children to Father. Mother argues that an award of sole physical custody of the children to Father was not in the children's best interests because she had been the primary caregiver for many years while Father was often away from home for his work and because Father intended to relocate the children to California if awarded custody. Considering solely that the children have resided in Missouri their entire existence, Father's intent to relocate the children to California where he resides and works might weigh against his receiving sole custody of the children. However, as recited above, evidence was presented that in Mother's custody, the children were living in unsanitary and unhealthy conditions and unnecessarily and inappropriately missing a substantial amount of school. "A good environment and stable home are primary considerations in determining a child's best interests." *Spire v. Adwell,* 36 S.W.3d 28, 32 n. 1 (Mo.App. W.D.2000) (citation omitted). Evidence was offered that Father and children love and enjoy being with each other, Father maintains a clean home with adequate accommodations for the children and is committed to satisfying their needs, and he will ensure that the children regularly attend school. The evidence supports the conclusion that the best interests of the children are better satisfied by awarding sole legal and physical custody of the children to Father. The points are denied.

The judgment of the trial court is affirmed.

HOWARD, P.J. and BRECKENRIDGE, J. concur.