Wesley B. **BINDER**, Appellant,

v.

Tamatha E. **THORNE–BINDER**, Respondent.

No. WD 65273.

Missouri Court of Appeals, Western District.

March 28, 2006.

Michael McIntosh, Independence, for Appellant.

Jill C. Allison, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

In this appeal from a judgment dissolving a marriage, Husband claims that the trial court erred in granting sanctions and striking his pleadings because he refused to comply with discovery. Husband also asserts several points of trial court error regarding the division of property. Affirmed.

## Facts

Husband filed a petition for dissolution of marriage in March of 2004. The couple has no children and neither party requested maintenance. During the marriage the couple owned and operated a construction business together. On July 6, 2004, the trial court entered a scheduling order requiring the parties to complete discovery on or before August 27, 2004. The scheduling order also set a trial date of September 14, 2004.

On August 26, 2004, Wife requested a continuance and asserted that she could not be ready for trial by the trial date because Husband had not produced financial documents relating to the years 2004 or 2003 and had produced few documents for 2002. Four days later Wife filed her first motion for enforcement of discovery arguing that Husband had not answered interrogatories nor complied with the standard discovery required by local court rule and the court's scheduling order. Wife asserted that as a result of Husband's failure to comply, she could not adequately prepare for trial. Husband did not respond to Wife's motion. The trial court then continued the trial date to December 2, 2004.

In September, Wife filed a second motion for enforcement of discovery and also moved for sanctions. Wife asserted again that the interrogatory responses sought from Husband were required by the scheduling order and local court rule and necessary for her trial preparation. Wife sought attorney fees in the amount of $500 and any other relief that the court deemed just and proper. Husband again did not respond. The court granted Wife's motion and ordered Husband to either respond to discovery within ten days or face having his pleadings stricken and costs assessed against him.

In October, having still not heard from Husband, Wife filed a third motion for enforcement of discovery and moved, again, for sanctions. Once more, Husband failed to respond. On November 22, 2004, ten days prior to trial, the trial court granted Wife's request for sanctions against Husband and ordered his pleadings stricken. Husband was then heard from on November 29, three days prior to trial, when he filed a motion to set aside the trial court's order granting sanctions and also sent partial interrogatory responses that Wife had been seeking. These interrogatory responses were incomplete, partially blank, and unsigned. No certificates of mailing appear in the record indicating that Husband sent any discovery or responded to any of Wife's requests until his November 29 effort, three days before trial.

As a result of Husband's failure to comply, the court did not permit him to present evidence or cross-examine at trial. Wife proceeded by default and introduced evidence as to the value of the marital construction business as well as evidence indicating what property was separate from the marital estate. Three homes were at stake. The court held that a house in Lee's Summit, Missouri, was Wife's nonmarital property, and that another house in Kansas City was Husband's nonmarital property. A lake house was deemed to be marital property by the trial court and awarded to Wife as her sole and separate property.

Husband was awarded all of the financial and physical assets of the construction business as well as other value in the company as testified to by wife. A $150,000 ski boat was deemed marital property by the trial court, ordered sold, and the proceeds split between the parties. The court ruled that a 2004 Lincoln Navigator, valued at $38,775, was nonmarital property of Wife's. Husband was ordered to make a $70,000 equalization payment to Wife.

Husband appeals the trial court's judgment asserting trial court error in the striking of his pleadings and the division/classification of property.

## I

In Husband's Point I he argues that the trial court erred in striking his pleadings, permitting Wife to proceed by default, and not allowing him to cross-examine witnesses or put on evidence. Husband asserts that, before imposing sanctions, the law requires the trial court to find that the moving party (Wife) was prejudiced by the non-compliance with discovery requests. Husband claims that Wife was not prejudiced by his failure to comply with discovery. Husband further argues that his actions did not constitute a deliberate disregard for the authority of the court and, more specifically, that these acts were not expressly found to be contemptuous.

■ A decision by the trial court to strike pleadings and to deny a party the right to present witnesses is reviewed for an abuse of discretion. *Bell v. Bell*, 987 S.W.2d 395, 399 (Mo.App.1999). Under Rule 61.01(b) and (d), sanctions for failing to timely answer interrogatories and/or produce documents are available upon motion and reasonable notice. An evasive or incomplete answer is treated as no answer. Rule 61.01(a). If sanctions are sought, the court may enter any order that is just, including striking part or all of the pleadings, or entering a default judgment. Rule 61.01(b)(d).

■ Husband is mistaken in arguing that, prior to imposing sanctions, the trial court must make a specific finding that the party's actions were contemptuous and resulted in prejudice from the non-compliance with discovery. No such requirement appears in the Supreme Court Rules governing sanctions. Nor has Husband cited any case requiring such findings to be made orally or in writing. Additionally, Husband's claim that the court erroneously struck his pleadings on its own motion because Wife did not request that his pleadings be stricken is also incorrect. Rule 61.01 does not require the movant to specifically request that pleadings be stricken in a motion for sanctions. Rather, the Rule allows the court, upon motion and reasonable notice to [the] other part[y], to order just relief including, but not limited to, striking pleadings, dismissing the action, entering judgment by default, or granting additional time upon reasonable excuse. Rule 61.01(b). Wife's motions for sanctions both requested attorney fees and such other relief as the Court deems just and proper.

■ Despite Husband's assertions to the contrary, the record, as reviewed above, reveals that he steadfastly refused to answer Wife's interrogatories in a timely manner, even after twice being ordered by the court to comply with discovery. Wife filed three motions to enforce discovery, two of which requested sanctions. Husband failed to file a response to a single one of those motions. Neither did he respond to the court's order enforcing discovery, which warned that if Husband did not comply, the court would strike his pleadings and assess costs. Husband did

not so much as request an extension of time in which to comply with discovery or offer any sort of explanation to the court as to why he would not comply. Significantly, no response from Husband appears in the record to any of the requests, orders, or demands for him to comply until *after* the court entered the harsh penalty of striking his pleadings. His only explanation was on the morning of trial and that tender is unpersuasive. Moreover, the interrogatory answers that Husband finally sent, after the sanctions came down, were found by the court to be incomplete and unsatisfactory.

In the face of Husband's insolent dedication to not cooperate with discovery or, as the trial court found, not play[ ] by the Supreme Court Rules, we find no abuse of discretion in the trial court's striking his pleadings and refusing to allow him to cross-examine during trial. Such a result promotes the notion of fair play in our otherwise adversarial system and is in keeping with relevant authority. *See In re Marriage of Lindeman,* 140 S.W.3d 266, 271 (Mo.App. S.D.2004) (striking husband's pleadings was not abuse of discretion when trial court repeatedly ordered him to comply with wife's discovery requests and alerted him to the possible consequences of non-compliance); *Crimmins v. Crimmins,* 121 S.W.3d 559, 561 (Mo.App. E.D. 2003) (striking husband's pleadings and preventing him from presenting evidence or cross-examining witnesses was appropriate sanction for husband's refusal to comply with discovery order requiring him to provide wife with copies of business records). Point denied.

---

Husband's remaining Points assert trial court error regarding the judgment of dissolution of marriage. Accordingly, with regard to Points II, III, IV, and V, the trial court's judgment will be affirmed unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares the law or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Holtgrewe v. Holtgrewe,* 155 S.W.3d 784, 786 (Mo.App. E.D. 2005).

## II

■ After refusing to supply any discovery relating to the value of the marital business, Husband argues in Point II, with no apparent sense of irony, that there is insufficient evidence to support the trial court's appraisal of the marital business. Specifically, he argues that the evidence does not support the trial court's $150,000 valuation for non-tangible assets of the marital construction business. The trial court's valuation of the company and its assets as awarded to Husband are as follows:

| Asset | Value |
| --- | --- |
| 1999 Ford Panel Van | $ 7,000.00 |
| 2002 Diesel F250 Truck | $ 36,490.00 |
| 2002 Goose Trailer | $ 4,200.00 |
| 2004 Bob Cat | $ 38,000.00 |
| Bob Cat Trailer | $ 3,800.00 |
| Bank Checking Account | $ 87,500.00 |
| Company Value* | $150,000.00 |
| *value exclusive of tangible assets | |

In the judgment, the trial court recited its frustration in attempting to value the company:

The evidence, and the record, regarding the value of the marital business is not fully developed because of [Husband's] unmitigated pattern of not providing discovery and not playing by the Supreme Court Rules. This Court finds [Wife] credible as to the value of [the marital business].

Wife testified that the company was worth $150,000, exclusive of the physical assets of the company (totaling $87,190) and the $87,500 company bank balance. The physical assets of the company and the bank account value were allocated to Husband

totaling $176,990, along with the additional value of the company of $150,000. Husband asserts that the true value of the company is only composed of the $176,990 in physical assets and the bank account, and that there was insufficient evidence to support the additional value of the company exclusive of those assets. The trial court did not elaborate on how it reached the $150,000 value of the company, exclusive of tangible assets; however, Wife testified that her basis for that figure was her knowledge of the company, its customer base, and its existing contracts.

 In a dissolution action the purpose of a valuation of a business is to determine its fair market value. *Thill v. Thill,* 26 S.W.3d 199, 203 (Mo.App. W.D. 2000). A variety of methods can be used to value the business, and no one formula is correct. *Id.* Wife testified that one basis for the $150,000 figure was her knowledge of the company's existing contracts. Such existing contracts are akin to an account receivable or a contractual obligation owed to the marital company representing the value of work in progress. *See Theilen v. Theilen,* 847 S.W.2d 116, 120 (Mo.App. W.D.1992) (accounts receivable akin to other tangible/monetary assets).

 Wife laid a foundation as to her ability to accurately value the company when she testified that she was the accountant and bookkeeper since it was founded in 1995. In that position, Wife was privy to the number of contracts entered into by the company and the amount of those contracts. The court did not include the value of these contracts in its itemization of company assets so they were eligible to be valued and awarded as other assets of the company. The court found Wife to be credible and we defer to the trial court's credibility determinations, viewing the evidence and inferences therefrom in the light most favorable to the

decree. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). Valuation of a business is a question of fact. *Thill,* 26 S.W.3d at 203. We believe substantial evidence exists in the record to support the $150,000 value of the company exclusive of its physical assets. Point denied.

## III

Husband's Point III asserts that the trial court erred in ordering a $70,000 payment from him to Wife. He raises several issues as the basis of this error. First, he asserts that the cash payment to Wife was improper because the marital business was improperly valued. Having found sufficient evidence to support the valuation of the company we decline to entertain that argument here. Husband also attempts to support his argument in Point III by asserting that the Lee's Summit home awarded to Wife as nonmarital property was improperly valued and improperly classified as nonmarital property—arguments to which we will turn in Point IV.

Next, Husband argues that the cash payment was improper because the Lincoln Navigator, valued at almost $39,000, was improperly deemed by the trial court to be Wife's nonmarital property. Husband asserts that half the value of the Navigator should have been credited to him as marital property accumulated after the marriage and, as such, the $70,000 cash payment should be reduced. Wife counters that the Navigator was her nonmarital property because it was acquired as a gift from Husband.

 Section 452.330.2 provides that marital property includes all property acquired by either spouse subsequent to the marriage with some exceptions. RSMo 2000. One such exception is when the property is acquired by gift, bequest, devise, or descent. *Id.* Even a gift from one

spouse to another is considered nonmarital property. *Townsend v. Townsend,* 705 S.W.2d 595, 598 (Mo.App. E.D.1986) (gifts from one spouse to another as anniversary presents considered nonmarital property). Clear and convincing evidence must be shown in order to defeat the presumption that property acquired after the marriage is marital. *Id.*

▮▮▮ Wife testified that Husband gave the Navigator to her as a Christmas gift and that Husband bragged to others that he had purchased such a lavish gift for his wife. The trial court's finding that Wife acquired the Navigator as a gift is supported by clear and convincing evidence and, therefore, it was properly deemed nonmarital property.

Finally, Husband argues that the trial court erred because it did not value the bank account reasonably proximate in time to the distribution date as required in *In re Marriage of Gustin,* 861 S.W.2d 639, 643 (Mo.App. W.D.1993). Wife testified as to the amount in the account eight months prior to the dissolution hearing but that sometime after February Husband closed the account and put the funds in an account in his sole name. She argues that the failure of Husband to respond to discovery requests deprived the trial court of the very information that it failed to consider. Husband does not even argue that it *was* error, only that it *might* be error. We disagree.

Point denied.

## IV

In Point IV, Husband argues that the trial court erred in finding the equity in the Lee's Summit residence to be $89,800, rather than $129,901, and also in finding the house to be Wife's nonmarital property. Husband claims that he is entitled to half of the $129,901 alleged value of the home and/or that the $70,000 cash payment to Wife should be reduced.

Wife responds that the home is nonmarital property (1) by way of agreement between the couple, and (2) because she acquired the home in exchange for property she acquired and owned prior to the marriage. Wife also concedes that the trial court erred by under-valuing the real estate at $89,800, rather than $129,901, but argues, nonetheless, that the trial court's judgment should not be disturbed because Husband was not prejudiced by the mistaken value. First we address the classification of the property and then we will turn to the effect of its improper valuation by the trial court.

▮▮▮ There is no dispute that the home was acquired after the marriage date. Wife asserts correctly, however, that property otherwise presumed to be marital can become separate by way of agreement between the parties. To make property acquired after marriage separate, the agreement must be written. Section 452.330.2(4) RSMo (2000); *King v. King,* 66 S.W.3d 28, 35 (Mo.App. W.D.2001). Wife does not allege, nor does the record contain, any such written agreement. Therefore, her testimony of an unwritten agreement between the parties cannot be the basis for defeating the presumption that the Lee's Summit home, acquired after the marriage date, is marital property.

▮▮▮ Thus, an alternative way the Lee's Summit home can be Wife's nonmarital property is if it was acquired in exchange for property acquired prior to the marriage, as Wife asserts. Section 452.330.2(2) RSMo (2000). Wife testified that the home was purchased with her nonmarital funds and that the deed was in her sole name. Wife introduced the deed and contract documents into evidence to support her testimony. The trial court was free to believe or disbelieve all, part,

or none of the testimony given by any of the witnesses. *Thill,* 26 S.W.3d at 203. We find clear and convincing evidence in the record to support the trial court's judgment that the Lee's Summit home is Wife's nonmarital property.

Turning to Husband's assertion that the Lee's Summit home was improperly valued, we first note that in order to obtain relief on appeal, Husband must not only demonstrate error, but that the erroneous valuation of Wife's separate property prejudiced him. We shall not disturb a trial court's judgment in [a] dissolution of marriage action if there is no showing of prejudice as a result of that judgment. Rule 84.13(b); *LaRocca v. La-Rocca,* 135 S.W.3d 522, 524–25 (Mo.App. E.D.2004). The trial court has a duty to consider the value of nonmarital property [of] each spouse in its division of marital property. *Silcox v. Silcox,* 6 S.W.3d 899, 905 (Mo. banc 1999). There are few cases finding the issue of nonmarital property division to be dispositive; however, the Supreme Court has recognized that a trial court's failure to consider one spouse's separate property, when the value of that separate property is significant as compared to the marital estate, can constitute prejudicial error. *Id.* However, as a general proposition, nonmarital property need not receive dollar for dollar consideration in the division of the marital property. *Smith v. Smith,* 702 S.W.2d 505, 509 (Mo. App.1985). Such a treatment to a great degree would eliminate the reason for the distinction between separate property and marital property. *Id.*

With these principles in mind, we find no reason to disturb the trial court's property division merely because it improperly valued Wife's separate home. When faced with an otherwise fair distri-bution of property, we generally will not reverse the trial court's judgment because of a mistake in the division that does not materially affect the merits of the divorce action. Rule 84.13(b); *McCoy v. McCoy,* 159 S.W.3d 473, 477 (Mo.App. W.D.2005). Here, the mistaken valuation by the trial court amounted to $30,000 of *separate* property where the total amount of property divided between the parties was over $500,000. Point denied.

## V

Finally, in Point V Husband argues that the trial court erred in failing to consider and divide certain marital debts. Specifically, he contends that the trial court failed to consider, and properly allocate, debt on a lake house of $64,494, on a large boat of $75,000, and on the Lee's Summit home of $70,099. He urges that the debt on the Lee's Summit home and the lake house should be assigned solely to Wife and that the debt on the boat should be split between the parties until the boat is sold.[1] A reading of the trial court's judgment renders Husband's arguments about the allocation of debt erroneous.

Despite Husband's assertions to the contrary, the trial court did address the debt on the lake house and on the boat in its judgment. With regard to the lake house, the trial court explicitly assigned the debt to Wife as the party receiving the property:

> IT IS FURTHER ORDERED by the Court that [Wife] shall receive the real property, a vacation home at the lake . . . as her sole and separate property. **[Wife] shall timely pay the debt encumbering said property and shall hold Petitioner harmless thereon.**

(Emphasis added.) Similarly, with regard to the boat, the trial court held that the

---

1. Per the judgment, the boat is to be sold and the proceeds split between the parties.

debt should be paid out of the proceeds of its sale:

> [Husband] and [Wife] have a marital asset in a 1990 41.6' Sea Ray Sundancer Boat, HIN SERP1126j990, which has an approximate fair market value of $150,000.00, encumbered by a debt owed to Kay Bank in the approximate amount of $75,000.00. The boat is presently in the possession of [Husband]. [Husband] shall immediately deliver said boat to [Wife]. [Wife] shall be responsible for the timely sale of the boat. **Upon the sale of the boat by [Wife], the debt to Kay Bank shall be paid in full and the remaining proceeds of sale shall be equally shared by the parties.**

(Emphasis added.) Thus, Husband's assertions that the trial court failed to consider and address the debt on the lake house and the boat are flatly refuted by the record.

Turning lastly to Husband's argument that the trial court erred in failing to consider and allocate the debt on the Lee's Summit home, we find this argument also without merit. We previously found the Lee's Summit home to be Wife's separate property. Only one spouse can be individually liable on a nonmarital debt, and the trial court cannot allocate such a debt to the other spouse upon dissolution of marriage. *Wright v. Wright,* 1 S.W.3d 52, 60 (Mo.App. W.D.1999). Unlike marital debts, nonmarital debts have no effect on the value of the marital estate to be divided and[,] thus, are not to be considered in deciding whether division of marital property is fair and equitable. *Id.*

First of all, Husband was clearly not prejudiced by the trial court's failure to assign the separate debt on the Lee's Summit home since nonmarital debt is not to be considered in the division of property. Perhaps more importantly, the trial court is only required by section 452.330 to divide the marital property and marital debt justly between the spouses; nothing in the statute requires that the nonmarital debt be divided. Having already found (as did the trial court) that the Lee's Summit home is Wife's nonmarital property, it would make little sense to assign the debt of that nonmarital property. It's Wife's nonmarital property and, thus, Wife's nonmarital debt. This court has no greater authority to assign nonmarital debt to husband than it does to award nonmarital property to husband.[2] The only logical conclusion is that the debt of nonmarital property follows the property to its owner, and the trial court did not commit error in failing to expressly allocate such debt.[3] Point V is denied.

The judgment is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.

---

2. Logically, since section 452.330 mandates that the value of nonmarital property be considered as a factor when dividing the marital property, the amount of nonmarital debt should likely be a consideration as well. But this argument was not raised, so we decline to rule specifically on the issue.

3. Although it would be possible that Husband was an obligor on the house debt although not a titled owner, there is no evidence that he was.