George DAVIS and Suzanne Davis, and G & S School Services, Inc., Respondents,

v.

CHATTER, INC. a/k/a Family First Alerts, David A. Raine and Tim Mosolino, Appellants.

No. WD 69056.

Missouri Court of Appeals, Western District.

Nov. 25, 2008.

Robert D. Gaines, Kansas City, for appellant.

Douglas D. Silvius, Kansas City, for respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

Defendants Chatter, Inc., David Raine, and Tim Mosolino appeal the judgment entered in favor of plaintiffs George and Suzanne Davis after defendants' pleadings were struck as a sanction for failure to cooperate with discovery. They make numerous claims on appeal pertaining to the sanctions imposed and the damages awarded. The judgment is vacated as to the compensatory damage award, and the case is remanded to the trial court to specify the portion of the compensatory damages awarded for Count I and the portion awarded for Count II. It is affirmed in all other respects.

## Facts

This case arises from an agreement in which the plaintiffs were to have been exclusive sales representatives for a company providing satellite text notifications to public entities needing reliable communications during a crisis. Plaintiff George Davis was an effective and successful sales representative, who, along with his wife Suzanne, was recruited by defendants from other endeavors to promote and develop a sales force for defendant Chatter, Inc.'s services. George and Suzanne Davis were also to receive company stock as part of their compensation for the development of markets for Chatter. Plaintiff George Davis alleged he had invested much time and energy recruiting, hiring and training representatives, and developing markets for defendants, but was never compensated in accordance with the contract. Plaintiffs further contended that defendants tortiously interfered with their contracts with third parties, refused to pay amounts due under the agreement, and caused them substantial damages.

On March 28, 2006, plaintiffs filed a petition for damages alleging breach of contract in Count I, tortious interference with contract in Count II, securities violations (related to the issuance of stock in Chatter, Inc.) in Count III, violation of the Telephone Consumer Protection Act in Count IV, and quantum meruit or unjust enrichment in Count V. Defendants filed a timely answer denying liability and asserting defenses.

Eight months after the case was filed, the circuit court entered a civil case management scheduling order. It set a trial

date in eleven months, scheduling it for October 9, 2007, and required discovery to be completed by September 1, 2007. Plaintiffs served defendants with first interrogatories and request for production of documents in July 2007. In August 2007, plaintiffs filed a motion to extend the discovery deadline from September 1, 2007, to October 1, 2007. The motion stated that the three defendants failed to appear for depositions and had not responded to written discovery requests. The court sustained the motion to extend discovery in September 2007. It noted that the trial date remained October 9, 2007.

Plaintiffs filed a motion to enforce discovery on September 12, 2007. The motion was based on defendants' failure to comply with discovery propounded on July 31, 2007. Defendants did not object to any discovery sought or seek any protective order. No documents responsive to the request were ever produced and no formal answer to the response was filed. Defendants' interrogatory answers to multiple interrogatories were incomplete and non-responsive. Defendants failed to appear for their depositions scheduled for August 30 and 31. The information sought was financial information regarding sales made during plaintiffs' employment and after plaintiffs' sales agreement was improperly terminated.

Plaintiffs also sought information regarding defenses asserted by defendants in their answer and in two prior motions to dismiss or for summary judgment, both of which were denied. On September 7, 2007, plaintiffs sent their "golden letter rule" to defendants. Defendants' reply was to re-send the same incomplete, evasive, unsigned interrogatory answers and to state that it had supplied the only relevant documents it had and that other documents were not relevant to the case.

Defendants' counsel moved to withdraw in August 2007 for the reason that counsel was having difficulty communicating with her clients and securing cooperation from them on discovery issues. The motion stated that the individual defendants Raine and Mosolino planned to proceed as *pro se* litigants. Chatter, Inc., a corporation, was apparently intending to secure new counsel. In September 2007, defendants' counsel was granted leave to withdraw.

On October 1, 2007, the court set a hearing on the motion for October 5, 2007. Notice was transmitted to the defendants in California. In an October 1 electronic message response to the judge concerning the October 5 hearing, Mr. Raine, who resided in California, stated that he had secured an air ticket to be in Kansas City for trial from the 9th to the 11th, but that he "lacked the financial resources" to be there for the hearing on the 5th. He added that he had fully complied with discovery requests related to plaintiffs' "frivolous" allegations by supplying whatever he had.

On the 5th, defendants failed to appear at the hearing either by counsel or in person. The court found:

> Defendants have failed to respond to the propounded discovery as required by the Missouri Supreme Court Rules, have failed to provide discovery after receipt of counsel's golden rule letter, have failed to respond to Plaintiffs' Motion for Enforcement of Discovery and have failed to appear for the hearing on Plaintiffs' Motion for Enforcement of Discovery.

The court struck the defendants' pleadings and entered an interlocutory order of default on all counts of plaintiffs' petition for plaintiffs and against defendants. The court scheduled a hearing for October 9, 2007, to determine the amount of damages

to be awarded. Immediate notice was provided to the defendants.

On October 8, Defendant Raine responded by electronic message. He informed the court that he had been "unable to secure the funds to purchase a ticket to Kansas City" for the trial. (We do not know how this related to the statement in his October 1 message that he had already secured a plane ticket to be present in Kansas City on the 9th, with a return flight to California on the 11th.) He requested a one week extension so he could "sell some personal items" to purchase a ticket.

That night, on the eve of the October 9 hearing, defendants engaged new counsel, Mr. Gaines, to appear the next morning in their behalf. Mr. Gaines, who had no opportunity to familiarize himself with the case, entered his appearance the next morning at the hearing. During the hearing, as a part of the court's sanctions ruling, Mr. Gaines was not allowed to cross-examine the plaintiffs' witnesses or otherwise participate. He objected to the denial of his participation and was allowed to make a record at the conclusion of all testimony.

The court made extensive comments on the record, pertaining to the sanctions imposed against the defendants. The court saw the issue as primarily one of fairness to the plaintiffs, because the defendants had been extremely recalcitrant and evasive about discovery. The court believed the defendants had followed a deliberate and calculated course of obstruction. The court believed the defendants had made their own bed. The court noted that one of the reasons that defendants' original counsel sought to withdraw was her inability to secure cooperation so as to proceed with discovery.

The court commented that "the file stinks of [defendants] not playing by the rules, as was just recited by [plaintiffs' counsel]." Even when Mr. Gaines appeared in behalf of the defendants, he had no knowledge of the case and, though it was not his fault, was entirely unprepared to address the issues of the case. The court explained why, in its view, the defendants' new counsel should not be entitled to participate at the hearing:

> Part of the consequences of the failure to participate is they don't get to come in at the 11th hour, not having been deposed, not revealed what their defenses are, not having revealed by any of the written discovery or by having been orally examined what their thought process is. Where they think they are going with their defense. And have someone show up at the 11th hour and just ask questions with no prior warning strikes me fundamentally unfair. So the ruling I made earlier that they would not be allowed to have a counsel participate, and by that I mean, you can't participate at all.

The court also explained why the sanctions were harsh:

> Your clients didn't do one thing right ever. So the discretion I'm exercising is as harsh as I can think of on purpose.
> . . .
> [After counsel sought again to ask questions] The point I want to make is, had the defendants submitted to a deposition and answered interrogatories or answered request for admissions which may have been propounded, a lot of these evidentiary issues and whether something was hearsay may have been resolved, may have been stipulated to. . . . . I want everyone to understand, including [defendants' counsel] as he sits there in a terrible disadvantage with his hands tied. It's exactly what I contemplated to be the consequence of all of the discovery [recalcitrance] and the pattern

of failure to participate that leads me to feel that it would be prejudicial and a terrible unfairness to the plaintiffs to have allowed participation of counsel when his client—his new found clients as of last night—had not participated in any step of the way to make the opportunity to make an evidentiary record smoother, easier and maybe without the need for hearsay. When it turns out the reason I have an incomplete record is exclusively, I find as a matter of fact, to be the defendants.

The court heard the testimony of the witnesses as to damages, and then entered judgment on October 15, 2007. It awarded $4,102,300 in damages to plaintiffs on Counts I and II. It awarded $100,000 in punitive damages on Count II. It determined that plaintiffs were issued 50,000 shares of unregistered stock in defendant Chatter, Inc., which the court determined that plaintiffs shall retain. The court found that the defendants violated provisions of the Telephone and Consumer Protection Act by sending 26 text messages to plaintiffs in violation of the Act and that such an act was done by defendants willfully or knowingly in violation of said Act and awarded damages in the amount of $13,000 and enjoined defendants from sending further text messages to plaintiffs.

### Standard of Review

■ "The imposition of sanctions for a party's failure to participate in discovery, including an order denying the right to cross-examine witnesses and present defenses, is a matter within the discretion of the trial court." *Karolat v. Karolat*, 151 S.W.3d 852, 857 (Mo.App.2004). "Rules 61.01(b) and (d) expressly permit a trial court to strike pleadings and enter judgment by default as permissible sanctions for failure to answer interrogatories or to produce documents." *Id.* "Although default is a drastic punishment, it is properly invoked where a party has shown a contumacious and deliberate disregard for the authority of the court." *Id.* "The rendition of judgment following the striking of pleadings for failure to obey a discovery order does not come by default in the ordinary sense but is treated as a judgment upon trial by the court." *Id.* "Thus, when such sanctions are imposed, the principles governing the appeal relate to the discretion of the trial court to impose such sanctions that render the cause uncontested and subject to judgment." *Id.* "The exercise of the trial court's discretion will not be disturbed on appeal unless it is exercised unjustly." *Id.* "Review is limited to determining whether the trial court could have reasonably concluded as it did, not whether the reviewing court would have imposed the same sanctions under the same circumstances." *Id.*

Defendants argue that there is a preference against default judgments when the litigants are *pro se*. He cites *Everest Reinsurance Co. v. Kerr*, 253 S.W.3d 100 (Mo.App.2008) (involving a default judgment under Rule 74.05(a), where the *pro se* litigant's purported "answer" was legally ineffective). Of course, even in the case of sanctions under Rule 61.01 there is a *preference* for resolving a case on the merits, but the circumstances differ from those of a true default because the sanction ruling is designed to punish obstructive behavior so as to deter such tactics. The purpose of the sanction is generally not merely to keep the case moving along. The question here is only whether the trial court abused its discretion in its rulings.

### Point I

■ In their first point, defendants claim the trial court exceeded its authority when it granted plaintiffs' motion to enforce discovery and entered its order of

default judgment. They claim the trial court failed to follow Missouri rules and statutes with respect to ordering sanctions.

Defendants argue that after a party responds or objects to discovery, a discovery order must be issued and then violated pursuant to Rule 61.01(b) and (d) before a default judgment may be granted. Rule 61.01 allows the court to impose sanctions, even severe sanctions, when there is an unreasonable lack of cooperation in discovery. The rule provides that an evasive or incomplete answer is to be treated as a failure to answer. Subpart (b) also provides that the court may, upon motion and reasonable notice to other parties, "make such orders in regard to the failure [to properly respond to interrogatories] as are just and among others the following:

> (1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party."

Subpart (d) provides that the court may enter similar orders for failure to produce documents and tangible evidence. Subpart (f) that the court may make similar orders for failure of a party to appear for a deposition.

Defendants here did not answer or otherwise respond properly to written discovery. Under Rule 61.01(b) and (d), a prior court order is required before the imposition of sanctions only where the responder asserts timely objections to the discovery propounded. None of the purported answers recited any applicable objections. Defendants say that they objected by means of various emails from defendants to plaintiffs, which plaintiffs attached to their motion to enforce discovery. These emails state that the defendants "have very little to present," that "plaintiffs have all necessary documents," and that there are "no further documents to produce."

The purported answers were not objections. Nor were they legitimate answers in context. The lack of good faith was also shown in that the purported answers were not signed, and no certificate of service was ever filed with the court. Instead, defendants emailed their so-called answers, unsigned, to plaintiffs. Plaintiffs acknowledged the response and attached it to the motion to enforce discovery. The court reasonably viewed the "answers" as evasive and incomplete.

These statements do not constitute objections. The court considered defendants' emails in this context and found them unavailing. The trial court was allowed to treat defendants' inadequate answers as a failure to answer. Rule 61.01(a). The court was permitted to impose sanctions "upon motion and reasonable notice to other parties." Such was given in this case. Any contention that the court was required to issue more preliminary orders is without merit.

Defendants also argue that plaintiffs failed to attach a copy of plaintiffs' request for documents or inspection to the motion to enforce discovery, to which defendants never responded. While that is technically true, we see no prejudice here, since the defendants had not complied or responded to the request. Moreover, the sanctions were imposed for a general refusal to comply with discovery and were not premised solely upon failure to produce documents.

Defendants further argue that the trial court gave four days notice of the hearing with respect to plaintiffs' motion and that five days notice is required by Section 506.060(4) and Rule 44.01(d). Section 506.060(4) and Rule 44.01(d) state, in pertinent part:

> A written motion ... and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period

is fixed by law or court rule or by order of the court.

These provisions, we believe, are intended to be applicable to notice provided by opposing counsel, not to a setting by the court. In any event, when insufficient notice is given under Rule 44.01, the court considers whether notice was reasonable under the facts and circumstances of the case. *Sitelines, L.L.C. v. Pentstar Corp.,* 213 S.W.3d 703, 707 (Mo.App.2007); *Zimmer v. Fisher,* 171 S.W.3d 76, 80 (Mo.App. 2005). Plaintiffs filed their motion on September 11, 2007. Defendants did not respond. On October 1, 2007, the court issued an order, and made sure that defendants received immediate notice, that, because defendants had failed to respond to the motion, the court was setting a hearing for October 5, 2007. There is no showing that this notice was unreasonable.

Defendants additionally argue that plaintiffs' deposition notices were defective because they gave insufficient notice pursuant to Rules 43.01 and 57.03(b) and that no order of default can be based on their failure to appear for the depositions. (It is interesting that the defendants, who before were very casual about technicalities, now are very interested in technicalities. The imposition of harsh sanctions can have that effect.)

Defendants assert that the notices were defective in several respects. First, they state that they were mailed, which requires notice of ten as opposed to seven days. This is unsupported by the legal record. All three notices were both faxed and emailed to defendants, but not mailed. The notices were sent to counsel for all defendants, before she had withdrawn from representation. This is service upon the defendants. Rule 43.01(b).

Defendants also state that if the notices were faxed, there is no indication they were faxed before 5:00 p.m. on August 23,

2007. The certificates of service state that the notices were faxed on August 23. Pursuant to Rule 43.01(d), this was sufficient, in the absence of other information, to indicate that they were faxed prior to 5:00 p.m.

Finally, defendants state that no party executed a Form 17 consenting to notice by email and, accordingly, all email notices are defective under Rule 43.01(c). Service was effective via facsimile; thus, whether it was effective via email is irrelevant. We note, however, that defendants chose to communicate with plaintiffs via email and provided their purported discovery responses via email as well.

The point is denied.

### Point II

In their second point, defendants claim the trial court abused its discretion when it entered its order of default judgment. They assert that no evidence suggested they acted with a deliberate disregard for the authority of the court. Defendants also assert that they had a meritorious defense and good cause for failure to comply with discovery deadlines. As set forth in the facts section, the trial court made extensive findings pertaining to the defendants' actions in this case. The court noted that defendants' counsel requested permission to withdraw because she was unable to obtain discovery from her clients. The court further commented that the file "stinks" of defendants "not playing by the rules" and that their efforts to change counsel were intended only to delay trial. Defendants failed to respond to interrogatories, failed to appear at scheduled depositions, failed to respond to the motion to enforce discovery, and failed to appear at the hearing on the motion. The court reasonably found that

the defendants acted with a deliberate disregard for the court's authority.

Defendants blame the court that they were without effective counsel because their attorney's motion to withdraw was granted less than a month before the hearing dates. Defendants also claim that the court granted plaintiffs' motion to enforce discovery without continuing the default hearing date or denying their attorney's motion to withdraw. Defendants' counsel was granted leave to withdraw on September 19; the hearing was scheduled on October 1 and occurred on October 5.

Defendants continue to act as though the court was required to presume that they were in good faith in their actions. They fail to persuade this court that they are innocent victims of an unreasonable trial judge. The trial judge had adequate reason to believe that the defendants' entire strategy was to delay, delay, delay, and then delay some more. Defendants never cared to cooperate with reasonable discovery. Defendants also had effectively communicated that they had no interest in addressing the merits of plaintiffs' claims. It appears their only interest was in forestalling justice as long as possible.

The point is denied.

### Point III

In their third point, defendants claim the trial court abused its discretion in prohibiting their newly retained attorney from participating in the October 9, 2007 default judgment damages hearing. They argue that the sanction was too harsh a remedy and unfair and improper under the circumstances. First, defendants maintain that the sanction was not stated in the October 5, 2007 order of default judgment. Second, they state that the sanction prevented them from being able to introduce evidence that would have reduced or mitigated damages. Third, defendants argue that the sanction prevented objections to hearsay and speculative evidence. Fourth, they conclude that the sanction was not warranted under the circumstances.

The trial court has discretion to strike pleadings, enter default judgment, and prevent a party from presenting evidence or cross-examining witnesses as a sanction for failure to participate in discovery. *See Crimmins v. Crimmins,* 121 S.W.3d 559, 561–62 (Mo.App.2003); *Portell v. Portell,* 643 S.W.2d 18, 20 (Mo.App.1982). Here, as we have seen, the trial court intentionally imposed the very harsh sanctions because of the defendants' actions. It explained that allowing the defendants to participate, after failing to provide necessary information or the basis of their defense, would be unfair to the plaintiffs. The trial court tolerated no nonsense, yet we do not see that under the circumstances the trial court's discretion was exercised unjustly.

Although generally cross-examination of witnesses in a damage hearing after an interlocutory judgment under rule 74.05 should be allowed in order to help insure the accuracy of the damage determination, and although participation by counsel may be required in assessing punitive damages in such a case, we must remember that this was a sanctions ruling under Rule 61.01, not an interlocutory order of default under Rule 74.05. We cannot say that in this case there was a manifest abuse of discretion in refusing to allow cross-examination or other participation as part of the applicable sanction. The trial court had carefully considered the circumstances, its actions, and the consequences thereof. The court was aware that the defendants brought to the table no good faith and was aware that defendants had hindered plaintiffs' ability to prepare to obtain and present evidence of the amount of their dam-

ages on the tortious interference claim as well as the contract claim. There is no allegation here that the trial court did not properly consider the evidence of damage and did not reach a proper result under the evidence (except that defendants allege that the court erred in merging the damages under the two counts). Nor is there an allegation of a constitutional due process violation in the determination of the punitive damage award. In the circumstances of this case, we discern no abuse of discretion or plain, obvious error.

Defendants were not denied an "adequate defense" when the court prohibited their new attorney from participating at the October 9, 2007 default judgment hearing. Their new attorney, contacted at the last minute, had no knowledge of the case, no chance to prepare, and nothing to present. The most he could have accomplished would have been to ask cross-examination questions or to make evidentiary objections. Appellants completely fail to demonstrate from the transcript how it would have made any difference if counsel had been allowed to cross-examine or make evidentiary objections. No examples are cited of how counsel's participation would have made a difference in the result. The damage had been done because the defendants had chosen a strategy of evasion rather than a strategy of litigating the merits. The defendants deprived themselves of any defenses or mitigation strategies they might otherwise have had.

The point is denied.

## Point IV

■ In their fourth point, defendants claim that the trial court abused its discretion in awarding punitive damages in its October 15, 2007 judgment. They argue that the award was in excess of the pleadings in violation of statute. They do not challenge the amount of the award on grounds that it was not supported by the evidence, except as to their argument on submissibility of punitive damages. Nor do they raise any issue under the due process clauses of the federal or state constitutions.

■ Defendants first assert that there was insufficient evidence of outrageous conduct, evil motive, or reckless disregard presented at the default judgment hearing. They assert incorrectly that this was a breach of contract case. It is true, of course, that punitive damages are inappropriate in such cases. Here, however, the punitive damages were awarded under the second count, tortious interference with contract, which is a tort claim that will support a claim for punitive damages when there is evidence of outrageous conduct and evil motive. *See Envtl. Energy Partners, Inc. v. Siemens Bldg. Techs., Inc.,* 178 S.W.3d 691, 708 (Mo.App.2005) (upholding an award of punitive damages for tortious interference with contract). *See also Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104 (Mo. banc 1996).

Moreover, the plaintiffs presented substantial evidence of outrageous and entirely unjustified conduct by the defendants in destroying the plaintiffs' contractual business relationships with third parties. Appellants fail to develop an argument that there is any evidence that would suggest anything other than outrageous conduct and evil motives. Punitive damages were submissible and were properly considered by the court.

■ Second, defendants contend that the award of punitive damages was a lump sum against all defendants, without consideration of the culpability or financial worth of each defendant. Of course, plaintiffs were prevented from discovering exactly how to break down culpability, and prevented from learning of the defendants'

financial status, because defendants refused to engage in discovery. It is not necessary that punitive damage awards fix separate amounts for separate defendants. *Bradshaw v. Deming,* 837 S.W.2d 592, 594 (Mo.App.1992), suggests only that, absent separate evidence of the financial condition of each defendant against whom punitive damages are awarded, the award against all defendants equally deserving of being punished should be the same. *Id.* at 595. The court complied with this principle.

Defendants also state that punitive damages were not specifically pleaded. To the contrary, they were specifically pleaded. Punitive damages were awarded under the second count, tortious interference with contract. Apparently, defendants mean that no specific *dollar amount* was sought in the claim for punitive damages. Rule 55.19 states that in actions upon an alleged tort "no dollar amount or figure shall be included in the demand" for punitive damages. This supersedes any inconsistent statutes or rules. Rule 41.02. Point denied.

### Points V and VI

In their fifth and sixth points, defendants claim that the trial court erred in awarding judgment with respect to Count I and Count II. The judgment states that compensatory damages are awarded on Counts I and II "in the total amount of $4,102,300.00." It does not specify which portion of the damages are related to Count I and which are related to Count II. Defendants Raine and Mosolino point out that they were not parties to the contract and were not named as defendants in Count I; only Chatter, Inc. was a defendant in Count I. In contrast, all three defendants were defendants to Count II. Because Raine and Mosolino were not defendants to Count I, they cannot be held liable for the portion of damages awarded under Count I.

Plaintiffs acknowledge this mistake but argue it is a harmless error because they are allowed only one recovery. While the error does not affect the total amount plaintiffs recover, it does impact the portion thereof for which Raine and Mosolino may be held responsible. Defendants argue that the error requires reversal without further action, resulting in plaintiffs' recovering none of their damages. That result would be nice for the defendants, but we see no indication that defendants are so entitled, and defendants present no such authority.

The court found the plaintiffs' compensatory damages under Counts I and II to be $4,102,300.00. Defendants do not assert that the award is unsupported by evidence. Thus, the question is what portion of the $4,102,300.00 in compensatory damage is under Count I and what portion is under Count II. This matter must be remanded for the trial court to address this narrow issue.

Defendants also argue that the judgment awarded damages in excess of the amount pleaded for both Counts I and II in violation of section 511.160. Counts I and II both pleaded damages "in excess of $50,000.00." Thus, the damages awarded were consistent with the pleadings. Moreover, section 511.160 applies to true default judgments under Rule 74.05. A judgment entered pursuant to pleadings struck under Rule 61.01 is a judgment based on sanctions, not a true default judgment (in which no answer was filed). This case is governed by general pleading rules as opposed to those geared specifically toward default judgments. *Hoodenpyle v. Schneider Bailey, Inc.,* 748 S.W.2d 683, 688 (Mo.App.1988).

The point is granted only to the extent that we will remand for specification of the

compensatory damages as between Counts I and II.

### Point VII

In their seventh point, defendants claim the trial court erred in granting judgment under the Telephone Consumer Protection Act because the Act applies only to consumers and not to persons who have a business relationship. 47 U.S.C. Section 227(a)(4). Defendants argue they have a business relationship with plaintiffs. A business relationship, once terminated, is no longer a business relationship. *See* 47 C.F.R. Section 64.1200(f)(5). The petition alleged, and there was testimony at trial, that the text messages were received at a time when there was no longer any business relationship with plaintiffs. It is undisputed that defendants terminated their relationship with plaintiffs. Defendants fail to develop an argument that there was evidence that showed there was a continuing business relationship. Thus, any contention that the damages were impermissible because a business relationship existed is unsupported by the record.

Defendants also claim that the interlocutory judgment awarded damages in excess of the amount pleaded in violation of section 511.160. In Count IV of the petition, plaintiffs requested the damages authorized under the Telephone Consumer Protection Act, specifically referencing their actual monetary losses or $500 per occurrence, whichever is greater. As we have already noted, section 511.160 applies to true default judgments, and this case is not a true default.

Defendants' various other arguments under this point are not identified in the point relied on. Thus, they are not preserved and are not addressed. *Sexton v. Omaha Prop. & Cas. Ins. Co.*, 231 S.W.3d 844, 846 n. 2 (Mo.App.2007).

Point denied.

### Conclusion

The trial court's imposition of harsh sanctions was within its discretion. The court did not lack authority to award compensatory and punitive damages. The damages under the Telephone Consumer Protection Act were not shown to be improper because the evidence showed that the parties' business relationship had been terminated. The judgment as to compensatory damages is vacated, and the case is remanded for the trial court to enter a judgment for compensatory damages, specifying what portion of the compensatory damage award is under Count I and what portion of such award is under Count II. It is affirmed in all other respects.

All concur.