Lawrence W. FERGUSON,
Plaintiff–Respondent,

v.

Alice M. STRUTTON, Defendant–
Appellant.

No. SD 29562.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 30, 2009.

Rehearing Denied Jan. 15, 2010.

Application for Transfer Denied
March 2, 2010.

James L. Thomas, Waynesville, MO, for Appellant.

Kimberly F. Lowe, Waynesville, MO, for Respondent.

DON BURRELL, Judge.

Alice M. Strutton ("Client") appeals a judgment entered against her in favor of Lawrence W. Ferguson ("Attorney") on his Petition to Enforce Attorney's Lien brought pursuant to section 484.130.[1] At-

---

1. Unless otherwise indicated, all statutory ref-    erences are to RSMo 2000, and all rule refer-

torney's suit was based on a written contingency fee agreement executed by Client. Client claims the trial court erred by 1) striking her pleadings for failure to comply with the court's order that she produce certain discovery materials; 2) failing to bar Attorney's claim by an application of the "unclean hands" doctrine; and 3) awarding Attorney monetary damages instead of ordering specific performance of the agreement's provisions. Finding merit in Client's third claim, we affirm the judgment in part, reverse in part, and remand with directions.[2]

## Factual and Procedural Background

Client, a high school graduate, was in a romantic relationship with her employer, Dr. Colyer, and they lived together for approximately twelve years. During the time they resided together, Dr. Colyer and Client apparently purchased several parcels of real property as joint tenants with right of survivorship. After they ceased cohabiting, Client believed she should be entitled to receive a portion of these real properties because of monetary contributions she had made toward their purchase.

Client initially hired attorney Mark Calvert ("attorney Calvert")—who was already representing her on another matter—to also represent her in her attempt to have the land sold and its proceeds divided between herself and Dr. Colyer ("the partition suit"). Client then contacted Attorney to get a second opinion on the partition suit. Client initially spoke with Attorney on the phone at least two times before meeting with Attorney in person at his office in Columbia. Attorney testified

that Client wanted him to represent her on a contingency fee basis because she would be receiving land in the partition suit and did not have a lot of money.

During the course of their meeting, Attorney and Client executed a written "Attorneys' Contingent Fee Agreement" ("the agreement"). The agreement was less than one page in length and its terms were set out in short paragraphs. One of those paragraphs stated, "The fee of ATTORNEYS shall be contingent and shall be Thirty–Three and One–Third Percent (33 1/3%) of whatever may be recovered, whether in money or property, or whether recovered through suit or compromise." The agreement bears the signature of both Client and Attorney. Client later stated that she "did not read [the agreement]."

Client claimed the land at issue was worth approximately $1.4 million. Client claimed that she had made substantial monetary contributions toward the acquisition of the property and should be entitled to receive half of it. Client also testified, however, that she had "no clue" how much money she made while working for Dr. Colyer or at her factory job and that Dr. Colyer had contributed more income than she did toward the purchase of the real property.

Attorney began work on the partition suit immediately, filing a Petition for Partition of Real Estate on January 11, 2006. The parties thereafter attended mediation and reached a settlement. After the partition suit had settled, Client first offered to pay Attorney's fee by granting him title to a 109 acre parcel of land.[3] Because Attor-

---

ences are to Missouri Court Rules (2009).

**2.** All of Client's points relied on fail to comply with the requirements of Rule 84.04 in various ways. Because the deficiencies do not substantially impede appellate review in this particular case, we have chosen to review the

substance of Client's allegations of error and not deny them based on the rule violations. *See Woodson v. City of Independence,* 124 S.W.3d 20, 24 (Mo.App. W.D.2004).

**3.** Client received 338 acres in the settlement.

ney "had agreed to cut her some slack," he testified he would accept this parcel as payment of his fee instead of what he perceived to be a more valuable developed parcel known as the "Hancock" property. Client then reneged on her offer because she felt the land she had offered was too valuable. After this, Attorney and Client split the cost of having both parcels appraised. Client then refused to pay Attorney anything, so Attorney sent her a formal letter requesting payment.

When no such payment was forthcoming, Attorney filed his petition for an attorney lien against the property Client had received in the settlement. Instead of praying to receive one-third of the land Client had received in the settlement, that petition requested a monetary judgment against Client in the amount of $135,804.06 plus costs.[4]

In response to Attorney's petition, Client asserted fraud in the inducement as both an affirmative defense to his request for an attorney's lien and as the basis for a counterclaim she brought against Attorney seeking monetary damages of $1.5 million plus $25,000 in attorney fees. That answer and counterclaim did not contain any reference to the equitable defense of "unclean hands." Client testified at deposition that the $1.5 million counterclaim was based, in part, on her belief that Attorney should have obtained more land for her as a result of the partition suit than she actually received in the settlement. Client also claimed that she could have easily afforded to pay attorney Calvert's hourly rate to pursue her partition claim, so she must have been fraudulently induced to enter

into her contingency fee agreement with Attorney.[5]

To prepare his defense against Client's counterclaim, Attorney propounded discovery requests on Client that sought, among other things, Client's income tax returns for the years in which Client claimed she had made financial contributions toward the purchase of the land owned by Dr. Colyer, up to and including the year the partition suit was filed. Client knew as early as June of 2008 that she was going to have difficulty obtaining copies of the requested tax returns. Despite this knowledge, Client failed to object to any of the documents being requested or seek an extension of time in which to respond. After waiting an additional month after Client's discovery responses were due, Attorney filed a motion to compel production of the documents and requested that the matter be set for a hearing. About this same time, the court entered a docket order setting the case for trial on October 20 and 21, 2008. Client successfully moved to continue the hearing on Attorney's motion to compel from August 6, 2008, until September 9, 2008—delaying any order for her to produce the documents by an additional month. Client then failed to appear for the September 9 hearing on Attorney's motion.

After Client failed to appear, the trial court entered a docket order directing Client to "answer all [Attorney]'s discovery within five (days) [and . . .] if [Client] does not produce discovery on September 13, 2008, then the Court Orders [Client's] Affirmative Defenses and Pleadings be stricken." On September 12, 2008—one day before the court's deadline—Client

---

4. This amount is roughly one-third of the value given the land by the appraisal Attorney and Client had jointly paid for, $406,000. Attorney's petition did not request an award of either pre-judgment or post-judgment interest.

5. Client stated she made approximately $25,000–30,000 annually, and that attorney Calvert's services could cost $25,000.

provided Attorney with only six of the seventeen requested tax returns and no W–2 forms. On October 2, 2008, the court issued an order striking Client's pleadings.

The day after the court entered its order striking Client's pleadings, Client filed a supplemental response to Attorney's second request for production of documents that included two more of the requested seventeen tax returns. Other documents Client produced were IRS "Account Transcripts" for years 2000 through 2007 and a "Social Security Statement" reflecting earnings on record from 1978 through 2005. The case was then tried to the court without a jury on either October 20 or October 22, 2008.[6] Thereafter, the trial court issued a money judgment in favor of Attorney in the amount of $165,671.46, an amount that included $29,867.40 in prejudgment interest, and also awarded Attorney post-judgment interest of 9% per annum.

### Analysis

■ "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The court's judgment may be affirmed for any reason supported by the record. *Koehr v. Emmons*, 55 S.W.3d 859, 862 (Mo.App. E.D.2001).

### Point I: The Striking of Client's Pleadings

■ The trial court struck Client's pleadings as a sanction for Client's failure

to comply with its order compelling her to produce all of the tax returns requested by Attorney. "We review a trial court's order imposing sanctions for discovery violations and its choice of sanctions for abuse of discretion." *Stockmann v. Frank*, 239 S.W.3d 650, 655 (Mo.App. E.D.2007). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Treetop Village Prop. Owners Ass'n v. Miller*, 139 S.W.3d 595, 602 (Mo.App. S.D.2004) (internal citations omitted).

■ "Rule 56.01(b) provides that 'parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action[.]'" *Karolat v. Karolat*, 151 S.W.3d 852, 858 (Mo.App. W.D.2004). "A trial court has an obligation to see that discovery rules are followed and to expedite litigation." *Id.*

■ The trial court's authority to strike pleadings as a sanction for a violation of the discovery rules is set forth in Rule 61.01.

(a) Any failure to act described in this Rule may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has filed timely objections to the discovery request or has applied for a protective order as provided by Rule 56.01(c).

For the purpose of this Rule, an evasive or incomplete answer is to be treated as a failure to answer.

(b) If a party fails to answer interrogatories or file objections thereto within

---

6. A docket entry dated October 20, 2008, indicates the trial had been re-set to October 22, 2008, but no docket entry appears on that date and the judgment itself is dated October

20, 2008. In any event, the proper date of the trial and judgment has no bearing on any of the issues raised in this appeal.

the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

(1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party.

"Rules 61.01(b) and (d) expressly permit a trial court to strike pleadings and enter judgment by default as permissible sanctions for failure to answer interrogatories or to produce documents." *Davis v. Chatter*, 270 S.W.3d 471, 476 (Mo.App. W.D. 2008). "Review is limited to determining whether the trial court could have reasonably concluded as it did, not whether the reviewing court would have imposed the same sanctions under the same circumstances." *Id.* "Before sanctions are imposed for failure to engage in discovery, the trial court must determine that the opposing party is prejudiced by the errant party's non-compliance with discovery." *Karolat*, 151 S.W.3d at 858.

■ Here, Client does not contest the sufficiency of Attorney's motion or claim she had insufficient notice. Instead, Client argues the trial court abused its discretion by striking her pleadings because Attorney suffered no prejudice as a result of her failure to produce the requested tax returns.[7] Specifically, Client argues that "[t]he only stated purpose for requesting the tax returns was to determine if [Client] could afford [Attorney]'s attorney fee. In the answer [sic] to interrogatories, [Client]

provided her gross income for all 16 years in response to interrogatories, which is the only relevant fact that would have been in her tax returns." We find this argument unpersuasive for two reasons.

First, tax returns are relevant because they are "a very useful tool in assuring the accountability of [a litigant's interrogatory] responses as to ... income." *State ex rel. Lichtor v. Clark*, 845 S.W.2d 55, 67 (Mo. App. W.D.1992). The requested tax returns would also help determine how much money Client might have had to contribute toward the purchase of the properties she was seeking from Dr. Colyer and whether she might have had trouble paying attorney Calvert to pursue that suit on an hourly rate basis. Second, and most importantly, any concerns about the relevance of the requested tax returns should have been raised by means of written objections lodged prior to the expiration of her original discovery deadline. Rule 61.01(a).

This case is analogous to *Karolat, supra.* In *Karolat*, a wife was frustrating her husband's attempts to determine how monies she had received during the course of marriage were either saved or expended by refusing to participate in discovery. 151 S.W.3d at 858. Those savings or expenditures were relevant because an appropriate distribution of marital and separate property was at issue. *Id.* In the instant case, Client's affirmative defense and counterclaim made relevant the amount of money she would have been able to contribute toward the purchase of the properties at issue in the partition suit and to expend on hourly attorney fees. Client's refusal to divulge her tax returns deprived Attorney of an important means of testing

---

**7.** Client's additional argument that the trial court abused its discretion because she did not act in a contumacious manner or show a deliberate disregard for the authority of the court was not set forth in her point relied on and will not be addressed for that reason. *State v. Smith*, 157 S.W.3d 687, 690 n. 3 (Mo.App. W.D.2004).

her claim that she had made significant monetary contributions toward the purchase of the real properties at issue in the partition suit and would have been able to afford to pay an attorney on an hourly basis to prosecute that suit.

In *Davis*, defendants failed to answer or respond properly to written discovery requests when they provided only partial answers and faulty objections. 270 S.W.3d 471. Upon motion and reasonable notice, the trial court did not abuse its discretion when it sanctioned the defendants by striking their pleadings and entering a default judgment in favor of the plaintiffs. *Id.* at 482. In another similar case, *Binder v. Binder*, 186 S.W.3d 864 (Mo.App. W.D. 2006), the Western District held that the trial court did not abuse its discretion by striking pleadings after Mr. Binder failed to respond to any discovery requests, failed to respond to a motion for sanctions, and failed to respond to an order enforcing discovery. *Id.* at 867–68. Mr. Binder failed to request additional time or even offer an explanation as to his failures to respond until the day of trial. *Id.* Client's actions here were similar to those present in *Binder* and were more egregious than those sanctioned in *Karolat* and *Davis*.

In the instant case, Client let the first discovery deadline pass without taking any action whatsoever toward acquiring and producing the requested tax returns. She, with the knowledge that her returns would be difficult to acquire and a belief that they were not relevant, produced no returns, made no request for an extension of time in which to produce them, and made no objections to their relevance. After Attorney filed his motion to compel their production, Client failed to appear at the hearing on the motion. Thereafter, Client provided only a few of the requested tax returns when the court had ordered her to produce all of them.

In response to Client's violation of its order—and with advance notice that it would do so if Client did not comply—the trial court struck her pleadings. Although the trial court had more drastic remedies available to it (i.e., entering a judgment by default against her as approved in *Binder*) it chose not to do so and required Attorney to prove his claim at trial. Client was present for that trial and was allowed to cross-examine Attorney's witnesses and present other evidence. Under the circumstances present here, we cannot say that the trial court's decision to strike Client's pleadings was an abuse of its discretion. Point I is denied.

### Point II: Unclean Hands

■ Client's second point argues the trial court erred and abused its discretion when it allowed Attorney to enforce the agreement because Attorney "made a material misrepresentation to [Client] to induce her to enter into a Contingent Contract" and this conduct left him with "unclean hands" that should have barred his recovery. "The doctrine of unclean hands is a matter of defense." *Guzzardo v. City Group, Inc.*, 910 S.W.2d 314, 317 (Mo.App. E.D.1995). As an affirmative defense, it must be asserted in a responsive pleading. Rule 55.08. As discussed above, the trial court did not abuse its discretion by striking Client's pleadings—a sanction that effectively precluded any defenses Client might have raised in those pleadings. Point II is denied.[8]

### Point III: The Form of Relief Granted

■ The entirety of Client's third point reads, "The trial court erred, as a matter of law, by entering a monetary judgment

8. In any event, the defense of "unclean hands" was not asserted in Client's pleadings.

instead of specific performance of the real estate." Client's third point makes no reference to the legal reason supporting its claim of error. It does not argue why the omitted legal reason would have required a reversal in the context of the case. This point fails to substantially comply with Rule 84.04 and thereby preserves nothing for review. *Rothschild v. Roloff Trucking,* 238 S.W.3d 700, 701 (Mo.App. E.D.2007). While a denial of this point based on its violation of Rule 84.04(d) would be appropriate, Attorney has not asked us to do so and defends the judgment on the grounds that it simply established the monetary value of his lien. As a result, we will address the point on its merits.

The relevant portion of the trial court's judgment reads as follows:

1) [Attorney]'s Attorney's Lien pursuant to RSMo. § 484.130 is hereby in full force and effect and that said lien was effective as of May 31, 2006.

2) [Attorney] is hereby awarded $165,671.46. Said sum represents the principal, prejudgment interest and expenses, which are as follows:

[subparagraphs setting forth the specific amounts awarded for the value of the real property acquired in the settlement of the partition suit; prejudgment interest; and the expenses incurred in pursuing the partition suit omitted]

3) [Attorney] is awarded post-judgment interest on the balance of said Judgment at the rate of 9% annum (or the maximum allowed by law), until said Judgment has been fully satisfied.

4) Costs are hereby taxed to [Client].

Contrary to Attorney's assertion, the language used by the trial court effectively granted Attorney an immediately enforceable monetary judgment. Attorney claims he was entitled to the relief granted by the trial court pursuant to section 484.130 which states:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

The express, written agreement Attorney had with Client provided, "The fee of ATTORNEYS shall be contingent and shall be Thirty–Three and One–Third Percent (33 1/3%) *of whatever may be recovered, whether in money or property,* or whether recovered through suit or compromise." (Emphasis added). What was recovered in this case was property, not money.

Point III is granted. The judgment is reversed, and the cause is remanded to the trial court which is hereby directed to 1) enter an order vacating the existing judgment; and 2) enter a judgment that awards Attorney an undivided one-third interest in the property recovered by Client as a result of the settlement of the partition suit.

BATES, P.J., and BARNEY, J., concur.